Lee **HOFFMAN** and **Judy Hoffman,**
husband and wife, Plaintiffs,

v.

**UNITED STATES of America,**
Defendant.

Civ. No. 65–562.

United States District Court
D. Oregon.

March 13, 1967.

James R. Moore, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for plaintiff.

Jerome Fink, Attorney, Department of Justice, Washington, D. C., Sidney I. Lezak, U. S. Atty., Norman Sepenuk, Asst. U. S. Atty., Portland, Or., for defendant.

OPINION AND ORDER

SOLOMON, Chief Judge:

Plaintiffs, Lee and Judy Hoffman, seek to recover $9,345.61 in federal income taxes paid in their 1958 through

1961 joint returns. The case was submitted on stipulated facts.

The issue is whether the Hoffmans' payments to a bonding company are deductible as losses in a transaction entered into for profit under § 165(c) (2), Int. Rev.Code of 1954,[1] or whether these payments are either nonbusiness bad debts deductible under § 166(d),[2] or losses from the sale or exchange of capital assets under § 165(f).[3]

In 1958, Lee Hoffman organized Lee Hoffman, Inc., to operate the contracting business which he had operated as an individual. He was the president, director, and the sole stockholder. He received a salary for his services as president.

In 1958, General Insurance Company of America (the Bonding Company) agreed to furnish performance and payment bonds for the corporation's construction jobs and the Hoffmans individually agreed to indemnify the Bonding Company for any loss.[4]

In 1959 and 1960, the corporation obtained construction contracts from Oak Lodge Sanitary Districts No. 1 and No. 2, and delivered two payment and performance bonds to the Sanitary Districts.

The corporation suffered financial losses. On April 11, 1961, to obtain additional funds, the corporation contracted not only with the Hoffmans individually, but also with the Bonding Company and The First National Bank of Oregon. The bank agreed to loan money to the corporation if the Bonding Company requested the loan and if the Hoffmans individually indemnified the bank and Bonding Company for all sums advanced. Ten days later the Hoffmans sold real property and turned over the entire proceeds, $20,400.83, on account of the funds advanced.

On November 20, 1961, the Bonding Company paid the bank in full, and it terminated the agreement wtih the bank. On the following day, the Bonding Company agreed to advance the corporation the funds needed to complete its construction contracts, and the Hoffmans individually agreed to indemnify the Bonding Company for any loss resulting from the advances.

Prior to November 30, 1962, the Hoffmans paid the Bonding Company $3,-740.00. On November 30, 1962, the Hoffmans transferred $56,283.40 in cash, stocks and realty to the Bonding Company for a release from all liability, which amounted to in excess of $900,000.

In 1965, the Hoffmans filed a claim for a tax refund with Internal Revenue. They contended that they were entitled to deductions in their 1958–1961 tax returns under § 165(c) (2) for the amounts paid the Bonding Company in 1961 and 1962. Internal Revenue rejected the claim.

Here, the Hoffmans raise the same issues they raised before Internal Revenue. The government contends Internal Revenue's decision is supported by either § 166(d) or § 165(f).

■ The issue under § 165(c) (2) of whether a transaction is one entered into

---

1. § 165(c) (2) provides:
   "(c) In the case of an individual, the deduction under subdivision (a) shall be limited to—
   "(2) losses incurred in any transaction entered into for profit though not connected with a trade or business."

2. § 166(d) provides:
   "(1) In the case of a taxpayer other than a corporation—
   "(B) where any nonbusiness debt becomes worthless during the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for more than six months."

3. § 165(f) provides:
   "Losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212."

4. The pertinent provisions of the agreement are:
   "The undersigned [the Hoffmans] shall indemnify and keep indemnified, The Company [the Bonding Company] against all loss, cost, damages, expenses and attorney's fees whatever, and any and all liability therefor, sustained or incurred by The Company by reason of having executed, executing or procuring the execution of any Such Bonds."

for profit is determined by the motive of the taxpayer and not by hard and fast rules. United States v. Keeler, 9 Cir. 1962, 308 F.2d 424, cert. denied 373 U.S. 932, 83 S.Ct. 1534, 10 L.Ed.2d 689 (1963). Lee Hoffman, sole stockholder and a salaried employee of the corporation, could expect substantial profits if the corporation was successful. The corporation could not conduct business without performance and payment bonds. The Hoffmans agreed to indemnify the Bonding Company only because they hoped to realize these profits.

I find that the transactions here were entered into for profit. See: Shea v. Commissioner, 36 T.C. 577 (1961), aff'd. per curiam 5 Cir. 1964, 327 F.2d 1002; Rietzke v. Commissioner, 40 T.C. 443 (1963); and Horner v. Commissioner, 35 T.C. 231 (1961).

The government, relying on Putnam v. Commissioner of Internal Revenue, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144 (1956), contends that regardless of the Hoffmans' motive, their loss is deductible only as a nonbusiness bad debt under § 166(d).

In Putnam, the taxpayer was an incorporator and stockholder of a corporation. He guaranteed the corporation's notes and when it defaulted he paid $9,-000 to the bank. He was unable to collect from the corporation, which had no assets. The Court held that Putnam was a guarantor and that he was only entitled to a worthless debt deduction because his liability to the bank was secondary. When Putnam paid the bank under a guaranty agreement, he became subrogated to the bank's rights against the corporation.

Putnam is not in point. Unlike Putnam, the Hoffmans were indemnitors. An indemnitor has a primary obligation to the creditor and he is not subrogated to the creditors' rights. See: Howell v.

Commissioner of Internal Revenue, 8 Cir. 1934, 69 F.2d 447.

In Shea, supra, and Rietzke, supra, Putnam was distinguished and guarantors of corporate debts were permitted to deduct their losses under § 165(c) (2). In each of these cases the taxpayer paid less than the full amount due under the guaranty agreement and he was relieved of liability. Since the taxpayer did not pay the full amount, the Court in both cases held that the taxpayer had not paid the corporation's debt and that the taxpayer's loss could not be treated as a worthless debt because he had no cause of action against the corporation.

The Hoffmans had a primary obligation to the Bonding Company. They did not reserve a right of subrogation against the corporation and after they paid the Bonding Company, they had no cause of action against the corporation. Their loss cannot be treated as a worthless debt because the corporation owed them no debt.

The Government contends that even if § 166(d) is not applicable, the Hoffmans are limited to a capital loss deduction under § 165(f) under Keeler, supra. Internal Revenue did not rely on § 165(f) when it made its original determination, and I find that the section is not applicable.

Section 165(f) only refers to losses "from sales or exchanges of capital assets." Commissioner of Internal Revenue v. Condit, 10 Cir. 1964, 333 F.2d 585. Here, there was no "sale or exchange."

I find that the Hoffmans incurred a loss in a transaction entered into for profit though not connected with their trade or business. They are therefore entitled to recover $9,345.61 plus interest and costs.

This opinion will serve as findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.