
**Rives E. and Lillian B. WORRELL**

v.

**UNITED STATES of America.**

**Civ. A. No. 1422.**

United States District Court
S. D. Georgia,
Savannah Division.

April 5, 1967.

Judgment May 26, 1967.

Julian F. Corish, Savannah, Ga., for plaintiffs.

W. Reeves Lewis, Asst. U. S. Atty., Savannah, Ga., and Walter J. Tribby, Tax Division, United States Department of Justice, Washington, D. C., for the United States.

## ORDER

SCARLETT, District Judge.

The parties in the above-styled case have agreed to the material facts and have submitted the case for decision by the Court on briefs and reply briefs.

The case involves a suit by the plaintiffs to recover certain taxes assessed against them for tax years 1956, 1957 and 1958, and paid by them, which taxes amount to more than $10,000.00.

The stipulation of facts shows the following:

that the plaintiffs during the tax years involved were husband and wife and filed joint income tax returns;

that the following amounts including tax and interest, were assessed against them and paid for these tax years: 1956, $1,650.58; 1957, $2,620.95; 1958, $6,978.62;

that Rives Worrell and Sylvan Byck organized on January 1, 1948, a corporation known as Byck-Worrell Construction Company, Inc., each paying $12,500.00 in cash to capital and each receiving 50% of the capital stock of the corporation;

that Rives Worrell was vice-president of the corporation and was actively engaged in the corporation's construction business, devoting practically his entire time to this work;

that the corporation in the normal course of its business executed many performance and payment bonds on individual construction jobs with bonding companies acting as sureties;

that the corporation was engaged in the general contracting business and during the time that Worrell was connected with the business, between 1948 and 1955, the corporation handled approxi-

mately twenty million dollars volume in construction;

that indemnity agreements were executed by Byck-Worrell in favor of sureties in the course of conducting the business of the corporation, and that the personal signatures of Byck and Worrell were required on the indemnity agreements because the corporation was not sufficiently capitalized to satisfy the bonding companies;

that on April 12, 1948, an indemnity agreement was entered into by the Byck-Worrell corporation, and Byck and Worrell individually, and the National Surety Company;

that Rives Worrell sold his interest in the corporation in December, 1955, and organized the Rives E. Worrell Company, Inc., to engage in the construction business;

that shortly after the formation of the Rives E. Worrell Company, Inc., the National Surety Company sent a letter to Mr. Worrell, dated March 20, 1956, advising Mr. Worrell to put forth collateral security;

that National Surety representatives contacted Mr. Worrell and advised him that if he did not fulfill his responsibility under the indemnity contract to their satisfaction, it would be difficult, if not impossible, for him in the future to obtain bonds for the operation of his own company;

that Mr. Worrell negotiated a compromise of his liability to the surety companies for losses sustained by such sureties by reason of performance and payment bonds issued in behalf of the Byck-Worrell Company, and on August 22, 1956, executed a promissory note in the sum of $50,000.00, payable $5,000.00 in 1956, and $10,000.00 a year thereafter until fully paid;

that Mr. Worrell paid the following amounts on the note: 1956, $5,000.00; 1957, $10,000.00; 1958, $10,000.00; 1959, $10,000.00; 1960, $7,500.00; 1961, $7,500.00, and retired the note;

that Mr. Worrell paid in 1956 $1,000.00 for attorney fees for negotiating the compromise;

that the plaintiffs deducted the attorney fees and the first payment of $5,000.00 on their amended 1956 tax return;

that they deducted $20,000.00 total for the tax years 1957 and 1958;

that Mr. Worrell was not in the business of lending money and he was not in the business of guaranteeing corporate obligations or indemnifying third parties against losses incurred as a result of corporations defaulting in their contractual obligations; but that as vice-president of Byck-Worrell Company, he was required to sign in his individual capacity the indemnity agreements so that the corporation could be bonded;

that Byck-Worrell never declared or paid a dividend during the time that Mr. Worrell was connected with the company, and that Mr. Worrell's only expectation in income from Byck-Worrell was in the form of salaries, dividends, bonuses, or the enhancement of the value of his capital stock;

that the plaintiffs did not deduct the note payments made in 1959, 1960, and 1961 on their respective tax returns, but thereafter filed timely claims for refund of taxes that would not have been paid had the deductions for the note payments been taken.

## CONTENTIONS

The plaintiffs contend that the $51,000.00 paid by Mr. Worrell to the sureties is deductible either as a loss from a transaction entered into for profit or as a business bad debt.

They concede that Mr. Worrell was not, and is not, a promoter of corporations, and that he is not engaged in the business of buying and selling and creating and selling corporations for profit.

They contend that Mr. Worrell was required to sign the indemnity agreement in behalf of Byck-Worrell Company, as a condition to the continuance of his employment as Vice-President of that company, to which company he was devoting

practically his entire time and for which services he received a substantial salary; and that Mr. Worrell was in the business of being a corporate executive such that his loss may be classified as a bad business debt. Trent v. C. I. R., 291 F.2d 669 (2 Cir. 1961).

They contend, in the alternative, that there is no debt that became worthless, because an indemnitor has no rights of subrogation under Georgia law upon payment of an obligation, National Bank of Tifton v. Smith et al., 142 Ga. 663, 83 S.E. 526, L.R.A.1915B, 1116, and that the loss sustained by Mr. Worrell should be classified as one that occurred in a transaction entered into for profit. Hoffman et ux. v. United States, D.Cl.Or., 266 F. Supp. 884, Civil No. 65–562, 3/13/67, Fitzgerald v. Commissioner, T.C. Memo 1967–1, CCH Dec. 28, 299(m).

The government contends that regardless of whether Mr. Worrell was guarantor, surety, or indemnitor, his loss results from a worthless debt, United States v. Byck, 325 F.2d 551 (5 Cit.), and that because Mr. Worrell has conceded he was not in the business of promoting corporations, his loss results from a non-business bad debt.

## DISCUSSION

The tax statutes provide the following, in substance: that in general, any loss may be deducted for the tax year in which it occurred, so long as the loss sustained by an individual was incurred in a trade or business or was incurred in any transaction entered into for profit, though not connected with a trade or business. Section 165.

Further, that wholly worthless debts are allowed to be deducted in full during the year in which they become worthless by an individual if such debt was created or acquired in connection with the taxpayer's trade or business or it is a debt the worthlessness of which is incurred in the taxpayer's trade or business. Section 166.

Mr. Worrell was vice-president of the Byck-Worrell Company, a construction company which operated in the normal course of its business through the use of bonding companies to guarantee its performance and its payment of employees and subcontractors. The bonding companies normally require indemnity agreements from their principals; they required and obtained an indemnity agreement from the Byck-Worrell Company. This was not enough to satisfy the bonding companies because of Byck-Worrell's relatively low capital ($25,000.00 original capitalization against twenty million dollars of construction business in the space of seven years) and so the bonding companies required the owners of the corporation to become co-indemnitors.

Mr. Worrell contends that his trade or business was working as a corporate executive for the Byck-Worrell Company, and that a necessity of that trade or business was that he agree to be liable in the event a bonding company had to fulfill its bonding promise and in the event the company could not indemnify the bonding company.

The government denies that Mr. Worrell had to sign the indemnification agreements as a prerequisite to continued employment with the business, because Mr. Worrell was co-equal with the only other owner and controller of the corporation and he could not be forced to perform any act of this nature.

To argue this proposition is to ignore the real fact that a construction business of this nature cannot operate without the use of bonding companies and to ignore the real fact that unless an under-capitalized, or insufficiently capitalized corporation has its substantial officers cosign agreements of indemnification together with the corporation as an entity, the bonding companies will not issue their bonds; and the officers will lose their jobs because the corporation cannot do business.

Mr. Worrell was called on his agreement, when the Byck-Worrell Company was in financial trouble and could not pay the surety companies which had paid under their bonds. Mr. Worrell was no longer associated with the Byck-Worrell Company at the time; he had left that

company and formed his own construction company. He paid $50,000.00 to the bonding companies, and he incurred $1,000.00 attorney fees in obtaining his release on the indemnification contract for the $50,000.00. He was told that he would be unable to procure bonding company services in his new company unless some agreeable settlement was worked out.

It is difficult to see how the loss, which beyond question occurred, out of pocket, can be classified as a worthless debt. There is no suggestion that as indemnitor Mr. Worrell was entitled to subrogation and had a right over against the corporation, and that because of the corporation's insolvency the debt became wholly worthless when he paid his $50,000.00. See Hoffman et ux. v. United States, U. S. District Court, D.Ore., 266 F.Supp. 884, Civil No. 65–562, 3/13/67. Indeed, to the contrary, the plaintiffs submit in their brief that under local law, "No right of subrogation arises for losses sustained under an indemnity agreement."

The government contends, however, that the bad debt provisions in the tax code were intended to cover loans of all types, regardless of their classification for purposes of local law.

It contends that Mr. Worrell's payment of $50,000.00 as a result of his promise to indemnify the bonding companies had the same economic impact as if Mr. Worrell had loaned $50,000.00 directly to the corporation and the debt had become worthless; and that Mr. Worrell paid this money, and lost it, as an investor rather than as a person after profit or in his own individual trade or business.

The Court is unable to sustain the government's contentions. If there was a debt from the corporation to Mr. Worrell such that the corporation impliedly promised to pay in the event Mr. Worrell guaranteed the corporation's indemnity to the sureties, and was called to pay, and the corporation's debt to Mr. Worrell, became liquid when Mr. Worrell paid $50.000.00, the debt was a business bad debt because Mr. Worrell acquired it as a condition of his employment, in his trade or business of being a corporate executive.

If there was no debt from the corporation to Mr. Worrell because as indemnitor Mr. Worrell was not entitled to subrogation, the $50,000.00 paid by Mr. Worrell occurred as a result of a transaction entered into for profit.

In either event, the $1,000.00 attorney fee is deductible.

The Court concludes that the plaintiffs are entitled to recover. The parties are directed to compute the amount recoverable by the plaintiffs, as agreed in the stipulation, and entry of judgment will await the submission of the amounts.

### JUDGMENT

Pursuant to the Court's Order, dated April 5, 1967, it is in accordance therewith,

Ordered, adjudged and decreed that the plaintiff shall recover of the defendant the sum of $17,459.10, plus interest and costs as provided by law.