**UNITED STATES of America, Appellant,**

v.

**Rives E. and Lillian B. WORRELL, Appellees.**

No. 25359.

United States Court of Appeals Fifth Circuit.

July 18, 1968.

Mitchell Rogovin, Asst. Atty. Gen., Richard C. Pugh, Acting Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Stephen H. Paley, Attys., Dept. of Justice, Washington, D. C., Donald H. Fraser, U. S. Atty., Savannah, Ga., for appellant;

W. Reeves Lewis, Asst. U. S. Atty., of counsel.

Julian F. Corish, Savannah, Ga., for appellees; Corish, Smith & Remler, Savannah, Ga., of counsel.

Before TUTTLE and DYER, Circuit Judges, and MEHRTENS, District Judge.

PER CURIAM:

This is another case in which a stockholder and officer of a closely held corporation seeks to deduct as ordinary losses or as business bad debts amounts paid by him as an indemnitor of the corporation's surety creditor. The case was tried by the district court solely on stipulations and documentary exhibits, 269 F.Supp. 897. The facts presented to the trial court are substantially identical with those which were before this court in the case of United States v. Byck (5 Cir.), 325 F.2d 551, since Byck and Worrell were two equal stockholders in the Byck-Worrell Construction Company, of which Byck was President and Worrell was Vice-President. Each paid $12,500 as his one-half of the total capital stock of $25,000 and each participated substantially in the management of the construction company's affairs. Also, each gave a personal indemnity to the bonding companies which bonded Byck-Worrell's construction contracts. Both persons paid off substantial amounts in satisfaction of their indemnity agreements.

█ A difference in the facts of record here and those in the Byck case, claimed to be significant by the appellee, is that here it was stipulated that, as vice-president of the company, Worrell received a substantial salary, whereas there was no evidence of record in the Byck case that Mr. Byck, the president of the company, received a salary. Furthermore, appellees base strong reliance upon the stipulation here to the effect that "as Vice-President of Byck-Worrell Construction Company, Worrell was required to sign the indemnity agreements on behalf of the corporation." Although it is clear from the record in *this* case,

by reason of other provisions in the stipulation, that Mr. Byck was also required to sign the indemnity agreement, appellee distinguishes the Byck case on the ground that this point was not in issue in that case because the "trade or business," which Mr. Byck claimed warranted his deduction, was a different one from that of Worrell. It was that of a "dealer in enterprises," the basis for the holding in Giblin v. Commissioner of Internal Revenue (5 Cir.), 227 F. 2d 692. Here, Worrell based his contention in this case on the theory announced in Trent v. Commissioner of Internal Revenue (2 Cir.), 291 F.2d 669, that under special circumstances the making of loans to his corporation because of a requirement of continued employment by a corporate employee may result in a finding that losses arising therefrom may constitute a loss incurred in the trade or business.

The difficulty faced by appellee here is that the record simply does not support his *contention* that Mr. Worrell was required by his corporation to sign the indemnity agreements as a condition for retaining his position as vice-president of the Byck-Worrell Construction Company. There was no oral testimony in this case, thus we have no word from Mr. Worrell or anyone else as to what his motive was in signing these indemnity contracts. The case was tried entirely on stipulation and documentary evidence. Even a casual reading of the stipulation makes plain that the "requirement" that Mr. Worrell sign the indemnity agreements individually was a "requirement" of the bonding companies who were being requested by the corporation to bond the construction contracts of the corporation. In paragraph 10 of the stipulation the language shows explicitly whose business it was that was being conducted when Mr. Worrell individually signed as an indemnitor. It says, "In the course of conducting the business of Byck-Worrell Construction Company, Inc. (hereinafter referred to as Byck-Worrell) an instrument entitled 'General Indemnity Agreement' with Na-

tional Surety Corporation was executed on April 12, 1948, and signed by Byck-Worrell and Sylvan M. Byck and Rives E. Worrell, individually." Then, further in the same paragraph of the stipulation there is the following provision: "Because Byck-Worrell was not sufficiently capitalized to satisfy the bonding companies, individual signatures of Messrs. Byck and Worrell were *required* on the indemnity agreements in addition to the corporate signature of Byck-Worrell." (Emphasis added.)

Moreover, the findings in the trial court include the following: "Indemnity agreements were executed by Byck-Worrell in favor of sureties *in the course of conducting the business of the corporation,* and that the personal signatures of Byck and Worrell were required on the indemnity agreements because the corporation was not sufficiently capitalized to satisfy the bonding companies."

Thus, it is clear beyond dispute that the "requirement" of the Worrell indemnity agreement was a requirement imposed by the bonding company as a condition to its executing construction bonds for Byck-Worrell, the corporation. The language of the stipulation does not permit the deduction or inference made by the trial court that Mr. Worrell was "required" by his corporate employer to sign the bonds as a condition of his continued employment.

The foregoing discussion does not indicate that we agree with the proposition that appellee relies upon in the Trent-type situation. We think serious doubt is cast on this by the language of the Supreme Court in Whipple v. Commissioner of Internal Revenue, 373 U.S. 193, at page 202, 83 S.Ct. 1168, at page 1174, 10 L.Ed.2d 288, where the court says, "Full time service to one corporation does not alone amount to a trade or business." To be sure, on the following page of the Supreme Court's opinion, it is said, "Nor need we consider or deal with those cases which hold that working as a corporate executive for a salary may be a trade or business, E.g., Trent v. Commissioner 291 F.2d 669 (C.A.2d Cir.)." As appellee points out, this first quoted language was dictum in the Whipple case. However, the common-sense construction of these much mooted and litigated sections of the Internal Revenue Code would require us to give serious weight to the dictum referred to, c.f. Kelly v. Patterson, 5 Cir., 331 F.2d 753, in which this court affirmed a denial by a trial court of relief under the Trent doctrine on facts quite similar but somewhat different from those present here.

■ Appellee makes the alternative argument that, if not entitled to the deduction as a loss arising in the separate business of the taxpayer of being a corporate executive, then he is entitled to the deduction because when he made a compromise payment of the $50,000 to the bonding companies, it was necessary for him to do that in order to continue in the construction business which he was then engaging in, and this would be a non-business debt under Section 165(c) (2), by being a loss incurred in a "transaction entered into for profit." The difficulty here is that the loss which Mr. Worrell incurred when he paid $50,000 to the bonding company was not "incurred" in his present transaction to continue in the construction business. It was "incurred" by reason of his signing the indemnity agreements years previously in connection, as we have held above, with the business of the Byck-Worrell Company.

Although not all the facts here present were fully developed in the record in the Byck case, and although the theory of the taxpayer is a different theory of recovery, we conclude that the result must be the same. The payments made by Mr. Worrell in satisfaction of his obligation to the bonding companies are not entitled to the tax treatment he sought under either section of the statute.

The judgment is reversed and the case is remanded to the trial court for the entry of a judgment in favor of the United States.