JOHN M. TRENT AND LISA M. TRENT, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71337. Filed August 24, 1960.

*Edmund K. Trent, Esq.*, for the petitioners.
*Victor H. Frank, Jr., Esq.*, for the respondent.

912

OPINION.

OPPER, *Judge:* It is petitioner's contention that his unpaid loans to Caldwell, Inc., and Plastic in 1954 became worthless in 1955 and that they are business bad debts deductible in full under the statute.[1] Respondent has determined that the debts were nonbusiness bad debts deductible only as capital losses and the case is presented to us on that issue alone.

Petitioner's contention is based on his statement that he tentatively agreed at the time of his employment to lend financial aid to his employer's business to an indefinite extent if and when circumstances should require it. He acquired stock in one of the companies at the very outset. We accept petitioner's contention that he was required to advance the funds in dispute to the companies as a condition to his continued employment in the business, as evidenced by the fact that he was discharged when he declined to make further loans. Respondent has determined,[2] that the advances were, in fact, loans as distinguished from capital contributions (as to Plastic), for which petitioner expected to be repaid and that the debts actually became worthless in 1955 to the extent claimed by petitioner.

It by no means follows, however, that the bad debts in question were other than "nonbusiness bad debts" within the meaning of the statute.

The distinction between business bad debts and nonbusiness bad debts for the purpose of the corresponding section 23(k) of the 1939 Code was discussed at length in *H. Beale Rollins*, 32 T.C. 604, affd. (C.A. 4) 276 F. 2d 368. After a careful review of the case, we held that the taxpayer, there, was not engaged in any trade or business within the meaning of the statute, saying (p. 615):

---

[1] SEC. 166. BAD DEBTS [I.R.C. 1954].
　(a) GENERAL RULE.—
　　(1) WHOLLY WORTHLESS DEBTS.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

　　　*　　*　　*　　*　　*　　*　　*

　(d) NONBUSINESS DEBTS.—
　　(1) GENERAL RULE.—In the case of a taxpayer other than a corporation—
　　　(A) subsections (a) and (c) shall not apply to any nonbusiness debt; and
　　　(B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.
　　(2) NONBUSINESS DEBT DEFINED.—For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than—
　　　(A) a debt created or acquired (as the case may be) in connection with a taxpayer's trade or business; or
　　　(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

[2] Counsel for respondent sought at the trial to amend his answer so as to deny that the debts became worthless in 1955 and asked for an increased deficiency, but this motion was denied as untimely.

It is clear, however, that the management of a corporation's business, or activity as an officer, director, or stockholder, even of several corporations, cannot be held to constitute the conduct of a separate business by petitioner. *Burnet v. Clark*, 287 U.S. 410; *Commissioner* v. *Smith, supra; Charles G. Berwind, supra.* The business of this group of related corporations is not the business of petitioner, *Burnet* v. *Clark, supra; Jan G. J. Boissevain*, 17 T.C. 325; *Langdon L. Skarda*, 27 T.C. 137, affd. 250 F. 2d 429 (C.A. 10), and his activities in regard thereto will not alone serve to establish him in the distinct business of promoting and financing corporations. * * *

The petitioner here is in a much less favorable position than was the taxpayer in the *Rollins* case. Before his association with Caldwell, Inc., and Plastic, petitioner had had but one employment, that with American Express Company. His managerial experience with that company was limited. His status with Caldwell, Inc., was strictly that of an employee. Although he held the title of "business manager" of Plastic, it is obvious that the affairs of that company as well as of Caldwell, Inc., were dominated by Caldwell. We have no evidence of the services actually performed by petitioner for any of these companies.

Petitioner's contention, however, is not that he was engaged in the business of being an officer or employee of numerous enterprises, or a promoter or moneylender, but that his business was limited to working for the two related corporations which currently employed him and that as a part of that business he made the loans in controversy. The issue presented "is a question of fact in each particular case." [3] But were we to uphold the petitioner's contention that these facts suffice to create a business bad debt, it would be necessary to overrule a large proportion of the cases dealing with this subject.

It frequently occurs that an officer or employee of a failing venture is called upon or volunteers to assist in keeping the enterprise afloat by advancing funds by way of capital investments, loans, or guarantees. The compulsion in these instances, as it was here, is that if the employer fails, the employment will fail with it. Yet it has repeatedly been held that this will not be adequate to convert a capital investment or loan or guarantee into a business expense on the one hand, or a business debt on the other. See, e.g., *Wheeler* v.

---

[3] "* * * The question whether a debt is one, the loss from the worthlessness of which is incurred in the taxpayer's trade or business, is a question of fact in each particular case, and the determination is substantially the same as that which is made for the purpose of ascertaining whether a loss from the type of transaction covered by section 23(e) is 'incurred in trade or business' under paragraph (1) of that section. The character of the debt for this purpose is not controlled by the circumstances attending its creation or its subsequent acquisition by the taxpayer or by the use to which the borrowed funds are put by the recipient, but is to be determined rather by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged *at the time the debt becomes worthless,* the debt is not a nonbusiness debt for the purpose of this amendment." (H. Rept. No. 2333, 77th Cong., 2d Sess. (1942), pp. 76–77; 1942–2 C.B. 431; emphasis added.)

*Commissioner*, (C.A. 2) 241 F. 2d 883, affirming per curiam T.C. Memo. 1955–138; *Charles G. Berwind*, 20 T.C. 808, affirmed per curiam (C.A. 3) 211 F. 2d 575; *H. Beale Rollins, supra*. In the *Wheeler* case, the Court of Appeals said (p. 884):

> The Tax Court found that these debts, although they may have been related to some business interests of the taxpayers, were not incurred in the trade or business of the taxpayer in the special sense of § 23(k). * * * The only instance where a shareholder or officer may deduct debts of his corporation to him as business bad debts under § 23(k) is where his business can be considered to be the promoting and financing of business enterprises. See, e.g., *Henry E. Sage*, 1950, 15 T.C. 299. * * *

In this very situation, petitioner makes no claim to an ordinary loss for the capital he was required to "invest" in his employer's stock. We think the loans he made under similar circumstances and for similar reasons are in no better case.

*Decision will be entered for the respondent.*