**Mitchell KELLY, Appellant,**

**v.**

**George PATTERSON, Director of Internal Revenue, Appellee.**

**No. 21109.**

United States Court of Appeals
Fifth Circuit.

May 11, 1964.

---

D. H. Markstein, Jr., Birmingham, Ala., for appellant.

Macon L. Weaver, U. S. Atty., Birmingham, Ala., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., John B. Jones, Jr., Acting Asst. Atty. Gen., Robert N. Anderson, Robert J. Golten, Attys., Dept. of Justice, Washington, D. C., for appellee, E. Ray Acton, Asst. U. S. Atty., of counsel.

Before CAMERON* and BELL, Circuit Judges, and INGRAHAM, District Judge.

GRIFFIN B. BELL, Circuit Judge.

This appeal is from a judgment denying claims for refund of income taxes. The claims were premised on the deductibility of worthless loans and consequent loss carryback to the years 1956 through 1959. The sole question presented is whether loans by a taxpayer [1] to a corporation under the stated facts gave rise to

---

* Judge Cameron participated in the hearing of this case, but died before this opinion was written.

1. Mrs. Kelly is a party by reason of a joint tax return having been filed. She took no part in the business activity here involved.

business bad debts within the meaning of 26 U.S.C.A. § 166.[2]

The stipulated facts disclose that Mr. Kelly operated the Gadsden Mill Works as a sole proprietorship for several years prior to 1958. He incorporated the K. V. K. Company, Inc. in 1955 but it did not actually begin business until 1957. He owned ninety eight percent of its capital stock and was its president. He transferred the assets of his sole proprietorship to the corporation in January 1958 and received 7,500 shares of its capital stock and a note representing an indebtedness of approximately forty thousand dollars in exchange therefor, and thereupon terminated the operation of his proprietorship. The stock had a par value of one dollar per share.

What operating capital the corporation had, if any, is not disclosed. However, the business conducted by the corporation was the same business which Mr. Kelly had conducted prior to 1958. The corporation showed net operating losses for the fiscal years ending April 30, 1958, 1959 and 1960. These losses were in the amounts of $1,671 in 1958, $152 in 1959 and $172,189.23 in 1960.

The tax returns of appellants for the years 1955, 1956 and 1957 show no income other than what was derived exclusively from the sole proprietorship operations of Gadsden Mill Works by Mr. Kelly. For the years 1958 and 1959 all of Mr. Kelly's income was from the corporation. It amounted to $11,384.90 for 1958 and $16,000 for 1959. Both Mr. and Mrs. Kelly received income from the corporation in 1960, Mr. Kelly receiving $2,228.90, and Mrs. Kelly receiving $1,425. Mr. Kelly also received a small sum as a teacher in the Huntsville Public schools.

Beginning in July, 1958 and ending in June, 1960, Mr. Kelly advanced, at various times, an aggregate of over $66,000 to the corporation, all of which became a worthless debt. This was over and above the original note taken along with the stock for the assets of Gadsden Mill Works. The corporation could not have continued in business during 1959 had it not been for these loans extended by the taxpayer. It became insolvent not. later than April 30, 1960. There was no evidence that Mr. Kelly invested in the stock of, or made loans to, any other corporation. He devoted all of his time to his employment by the corporation.

The District Court ruled that the loans constituted nonbusiness bad debts. within the meaning of the statute. We agree. The burden was on the taxpayer to show that he was entitled to the claimed deductions, i. e., that he was engaged in a trade or business, and that the debt in question was incurred in connection with that trade or business. His business is to be distinguished from that of the corporation, and the debt must bear a proximate relationship to his trade or business. See United States v. Byck, 5 Cir., 1963, 325 F.2d 551.

It is settled that loans by a controlling shareholder to his closely held corporation generally give rise to nonbusiness debts. This is because an investor is not engaged in a trade or business. An exception is where the shareholder can establish his business as being

---

2. "§ 166. Bad debts
"(a) General rule.—
"(1) Wholly worthless debts.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.
   \*     \*     \*     \*     \*
"(d) Nonbusiness debts.—
"(1) General rule.—In the case of a taxpayer other than a corporation—
"(A) subsections (a) \* \* \* shall not apply to any nonbusiness debt; and
"(B) where any nonbusiness debt becomes worthless within the taxable year, ·

the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.
"(2) Nonbusiness debt defined.—For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than—
"(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or
"(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's business."

that of promoting, managing and financing corporations. No such claim was made here. See Whipple v. Commissioner, 5 Cir., 1962, 301 F.2d 108, vacated and remanded on another ground, 1963, 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288; and Byck, supra, where the exception was recognized but held not established. The Supreme Court makes it clear in its decision in Whipple that a bad debt loss sustained by an investor furnishing management to a corporation is not one sustained in, or in connection with a trade or business. And the following cautionary language is from that opinion:

"Even if the taxpayer demonstrates an independent trade or business of his own, care must be taken to distinguish bad debt losses arising from his own business and those actually arising from activities peculiar to an investor concerned with, and participating in, the conduct of the corporate business."

Appellants place their main reliance on Trent v. Commissioner, 2 Cir., 1961, 291 F.2d 669, where loans made by a minority stockholder to a corporation to retain his job with the corporation were held to be business debts. There the stockholder as a condition precedent to employment purchased one third of the capital stock and agreed to make loans from time to time to the corporation as it was getting established. He made some advances and was discharged when he refused to make others. This holding was on the predicate that the employee was engaged in the trade or business of rendering services to the corporation and that this was a trade or business within the meaning of the statute, and separate and apart from that of the corporation.

It is argued that here Mr. Kelly made the advances to save his job. This is said to follow from the proposition that the loans and resultant debt were made in connection with and proximately related to his trade or business as an employee of the corporation. Thus the nonqualification of the debt because of the infirmity of its having arisen from loans made by an investor furnishing management to a corporation would not matter, if there existed another basis for qualification.

The Supreme Court observed in the Whipple case that it was not necessary to consider Trent and related cases in reaching its decision, but did note the limitation of Trent to a minority stockholder seeking to save his job, or some other proximate relation to maintaining his trade or business as an employee. This treatment does, however, lend credence to the underlying rationale of Trent that a corporate employee is engaged in a trade or business in his capacity of employment.

The latest chapter in the Trent doctrine involved a majority stockholder serving as president of a closely held corporation, and receiving a substantial salary just as is the case here. Weddle v. Commissioner, 1962, 39 T.C. 493, 497; affirmed, 2 Cir., 1963, 325 F.2d 849. There the president was considered to have been engaged in the separate business of being an employee of the corporation. It was nevertheless held that the loan made by her to the corporation, under the facts as they existed, was made in her role as a stockholder or investor, and that any benefit received as an employee was indirect and insufficient to establish a proximate relation to her trade or business of being an employee. On appeal, while affirming, a majority of the court was of the view that the necessary proximate relation might be established even where the primary motivating cause for the loan having been made was from the standpoint of a stockholder investor, if there was a significant secondary motivation related to the trade or business of being an employee. This standard was criticized in a concurring opinion on the ground that the proper criteria was that applied by the Tax Court of requiring a showing that the primary and dominant motivation for the loan creating the debt in question was in connection with the business of the employee, rather than to protect an investment. At this juncture then, both in the Tax Court and the Second Circuit, Trent has been expanded beyond its facts to include a majority stock-

holder-employee, provided the debt is proximately related to the trade or business of being an employee.

It appears then that the only problem under facts such as those here presented of loans by a majority stockholder-employee to the corporation is to determine whether the debt qualifies as trade or business incurred on any statutory basis, and this depends on the motivation of the taxpayer in making the loans which created the debt.

Mr. Kelly was the controlling stockholder with a substantial investment in the corporation as compared to the salary received. The proof falls short of showing the loans to have been proximate to his business of being an employee of the corporation under either of the standards asserted by the Second Circuit in Weddle. What the proof does show, on the other hand, is that the loans were made as an investment or to protect an investment, and only indirectly to saving Mr. Kelly's job through saving the investment. This type situation falls under the investor doctrine of Whipple. Cf. Byck, supra.

Affirmed.