OPINION Naum, Judge: This case involves not only the deductibility of the various payments made by petitioner in respect of First National City’s $300,000 loan to Cubana, but also the proper tax treatment of the loss sustained by petitioner on his own advances aggregating $40,000 to Cubana. We deal first with this latter issue. 1. The $lfi,000 Loom,. — There is no dispute that this loan became worthless in 1960 and that it is deductible in full in that year unless it is a “nonbusiness” debt. Sec. 166 (a) and (c), I.R..C. 1954. Moreover, it is also clear that if petitioner’s sole relationship to Cubana were that of a stockholder, his loan to the corporation — even if related to the business of the corporation — must be treated as a non-business loan. For it has been firmly settled that the business of a stockholder and that of his corporation are distinct, and that the business of the corporation may not be regarded as his business. Whipple v. Commissioner, 373 U.S. 193; Deputy v. Du Pont, 308 U.S. 488; Burnet v. Clark, 287 U.S. 410; Dalton v. Bowers, 287 U.S. 404. But it is equally clear that the stockholder may also be engaged in an activity unrelated to his status as a stockholder, and that if such activity itself constitutes a trade or business the stockholder’s loan to his corporation may qualify as a business loan provided that it is proximately related to that trade or business. Cf. Trent v. Commissioner, 291 F. 2d 669 (C.A. 2), reversing 34 T.C. 910; Weddle v. Commissioner, 325 F. 2d 849, 851 (C.A. 2), affirming 39 T.C. 493, 496; Kelly v. Patterson, 331 F. 2d 753, 756 (C.A. 5); I. Hal Hillsap, Jr., 46 T.C. 751, 758; Louis Lesser, 42 T.C. 688, 699, acq. 1966-2 C.B. 5, affirmed on other issues 352 F. 2d 789 (C.A. 9); Wilfred J. Funk, 35 T.C. 42, acq. 1961-2 C.B. 4. This was made abundantly plain in Whipple where the Supreme Court ordered a remand for further proceedings to determine whether the worthless debt there involved was proximately related to a certain business activity of the stockholder-creditor which had not theretofore been considered. 373 U.S. at 204-205. We hold that petitioner’s $40,000 advances to Cubana represented something substantially more than a mere effort to protect his stockholder interest in the corporation, cf. Jean U. Koree, 40 T.C. 961, and that it was proximately related to his business as a partner in Wood, Struthers. There is little question that petitioner was engaged in the trade or business of investment banking. As an investment banker his income flowed primarily from the fees and commissions generated by the underwriting and promotion of various business ventures. It was in connection with that business that Wood, Struthers, with petitioner as the prime mover, undertook to promote the Cubana venture, and securities in Cubana were sold to customers of the firm. Petitioner reasonably regarded himself as being particularly responsible for the investments made by clients to whom he had recommended these securities. The firm dealt with only a comparatively small number of clients of substantial means, and petitioner feared that the failure of the venture might have a serious adverse effect upon the firm and his business, particularly since he had already sought and obtained additional financing from his clients to complete the unanticipated reconstruction program. It was primarily for this reason that he made the $40,000 advances, to keep the Cubana venture from going under and thereby to protect his business relationship with his clients. We recognize, of course, that petitioner was at the same time protecting his own interest as a stockholder in Cubana, and although the matter may not be completely free from doubt it is our best judgment on the record that the advances nonetheless bore the requisite relation to his business as an investment banker. This case is thus distinguishable from Jean U. Koree, 40 T.C. 961, where on the facts before us we concluded that a stockholder-creditor’s loan to a Cuban corporation was motivated primarily by his interest as a stockholder and that any possible relationship to a trade or business of the lender was at most incidental. 2. Payments on the Bank's Loan to Oubana. — In arranging for the bank’s $300,000 loan to Cubana and making the payments in question petitioner was motivated by considerations similar to those pertaining to his own $40,000 loan. However, the matter arises in a more complicated context by reason of the interposition of Panfield as a guarantor. Petitioner advances a number of alternative theories in support of bis claimed right to deduct the payments in question, under section 162 (business expense), section 165 (loss), and section 166 (business bad debt). Thus, he argues that Panfield was merely an accommodation guarantor and that he was the “true” guarantor with the result that when he made the payments he became subrogated to the bank’s rights against Cubana which became worthless in his hands as a business bad debt under section 166. If we could accept petitioner’s major premise, we would have no difficulty in approving his conclusion. For, if he were to be treated as the guarantor, the deductibility of the worthless subrogated' debt would depend merely upon whether it was proximately related to his trade or business, Putnam v. Commissioner, 352 U.S. 82, and we would reach the same result here in respect thereof that we did in connection with petitioner’s personal loan of $40,000 to Cubana. The difficulty with this theory, however, is that petitioner was not in fact the guarantor of the loan because the bank had no legal recourse against petitioner to compel payment. Consequently, petitioner did not become subrogated to the bank’s claim against Cubana so as to furnish the basis for a debt which became worthless in his hands. In the absence of a worthless debt in petitioner’s hands section 166 is inapplicable. Nevertheless, we agree with petitioner’s contention that he is entitled to the deductions in issue under section 162(a), as ordinary and necessary expenses incurred in carrying on his trade or business as an investment banker. For the same reasons already outlined in connection with petitioner’s own $40,000 advances to Cubana, he also arranged the $300,000 bank loan with Panfield as guarantor and in effect agreed with his brother Eobbins (the only other stockholder in Panfield) that he would personally pay any amounts that Panfield might be called upon to pay under its guaranty. The bank would not have made the loan solely upon Panfield’s guaranty; it knew petitioner and his reputation for integrity in the business community and it looked to him to see that the loan would be repaid, notwithstanding the absence of any legal liability to the bank in this respect. When the default occurred petitioner voluntarily made the payments called for under the guaranty. In thus making these payments petitioner was protecting his reputation for integrity in the financial world. The mere fact that they were voluntary vis-a-vis the bank does not deprive them of their character as ordinary and necessary business expenses. James L. Lohrke, 48 T.C. 679; C. Doris H. Pepper, 36 T.C. 886, acq. 1962-1 C.B. 4; Charles J. Dinardo, 22 T.C. 430. It is sufficient that they grew out of an arrangement between petitioner and tbe bank that was entered into to protect petitioner’s business as an investment banker. Accordingly, we think that these payments were proximately related to his business as an investment banker and that they qualify as ordinary and necessary business expenses. In arguing against this conclusion the Government takes the position that petitioner’s payments were merely capital contributions to Panfield, citing Leo Perlman, 27 T.C. 755, affirmed 252 F. 2d 890 (C.A. 2). In our view cases like Perlman are distinguishable, and the Government’s attempt to apply the results in those cases to the present situation is based upon a faulty understanding of the problems. In Perlman the stockholder-creditor canceled the indebtedness of his corporation solely to strengthen its financial position. Such a purpose clearly indicates a contribution to capital since the cancellation was not proximately related to the taxpayer’s own business. This is not the case here. We have already pointed out that petitioner’s payments on the Cubana loan to the bank were proximately related to his investment banking business. Furthermore, it was never intended as 'between petitioner and Robbins that iPanfield would ever be financially disadvantaged as a result of Cubana’s default. In carrying out that understanding he was hardly making any capital contribution to Pan-field. We hold that in the unusual circumstances of this case there was no contribution to capital, and that the payments in issue are deductible as business expenses. Accordingly, we do not consider any further alternative contentions of petitioner based upon section 165. Decisions will he entered under Rule 50.