ROBERT F. RAGAN and MILDRED C. RAGAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ragan v. Commissioner
Docket No. 9300-78.
United States Tax Court
T.C. Memo 1980-94; 1980 Tax Ct. Memo LEXIS 490; 40 T.C.M. (CCH) 13; T.C.M. (RIA) 80094; March 26, 1980, Filed Robert F. Ragan, pro se. Barry Bledsoe, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a) [1]
1975
$ 1,685.43
$ 84.27
1976
$641.72
32.09
After concessions by both parties, the only issue remaining is whether petitioners are entitled to deduct premiums paid on a life insurance policy used as collateral for a note, in which petitioner Robert F. Ragan promised to make good losses suffered by a friend who guaranteed loans to petitioner's business. FINDINGS OF FACT Most of the facts have been stipulated and are found accordingly. Petitioners Robert F. and Mildred C. Ragan resided in Montgomery, Ala., at the time they filed their petition in this case. Life has not been easy financially for petitioner Robert F. Ragan (hereinafter referred to as petitioner). Petitioner was experiencing business difficulties *492 when he approached his friend W. Harold Brendle (Brendle) in 1971. The two had worked together as members of the same church, and Brendle agreed to help petitioner get back on his feet again. Brendle and petitioner formed the R & B Corporation R & B) in January 1971. Brendle was to provide financial backing while petitioner had sole control over managing the business.R & B acquired an automotive wholesaler called City Auto Parts Company and a distributorship franchise from the Cromwell Oil Company. To finance these acquisitions and initial operations, R & B borrowed in excess of $40,000 from the First National Bank of Montgomery. Brendle signed the notes evidencing this indebtedness both on behalf of the corporation and individually as a guarantor. In addition, Brendle pledged his home and other assets as security for the note. Petitioner did not sign the notes, nor did he and Brendle agree at that time that he would reimburse Brendle if anything went wrong. Both of them expected the corporation to pay off the notes in due course. Things went wrong almost immediately, and R & B was liquidated in 1972. Part of R & B's debts were covered by selling off its inventory, but *493 Brendle was required to take over the payments on the notes to the bank he had endorsed as a guarantor. Sometime after R & B had been liquidated, petitioner told Brendle he would make good the losses Brendle had suffered. To this end, in March of 1974 petitioner executed a note payable to Brendle in the amount of $40,000. The note provided that a life insurance policy would serve as collateral to secure payment of the note. On April 28, 1974, petitioner purchased an insurance policy on his own life for $70,000 from the American General Life Insurance Company of Delaware. At petitioner's death, the proceeds of the policy are to be first used to pay Brendle the outstanding balance on petitioner's $40,000 note. The remaining proceeds will go to the policy beneficiary, petitioner's wife. Petitioner assigned the policy to Brendle on May 16, 1974. During both 1975 and 1976, petitioner paid premiums of $2,551.44 on the insurance policy which served as collateral for his note to Brendle. Thereafter, petitioner suffered further financial reverses and Brendle started making the premium payments himself. On their 1976 return, petitioners claimed a deduction of $2,551 for "repayment *494 of wages taxed in prior years." In their petition, they admit that this amount in fact represented insurance premiums paid, but assert that the premiums constituted payments of business losses. Petitioners now claim they are entitled to a similar deduction of $2,551 for 1975. In his statutory notice, respondent disallowed the deduction for insurance premiums paid in 1976. OPINION The only issue presented is whether petitioners are entitled to deductions for life insurance premiums paid on a policy used as collateral for a note, by which petitioner hoped to make good losses suffered by a friend who guaranteed loans to petitioner's business. After the failure of R & B corporation, which he had managed, petitioner was out of a job but he was not liable for R & B's losses. He nevertheless felt responsible for the losses of his friend and financial backer, Brendle. Lacking any other means of repayment, he hoped that by insuring his own life for the loss suffered by Brendle his moral obligations would eventually be repaid one way or another. Petitioner, who is pro se, argues that his payments of insurance policy premiums are deductible because they arose out of a business *495 loss. We treat his argument as embracing alternate claims under section 166, for the bad debt losses of a guarantor; section 165, for business losses; and section 162, for ordinary and necessary business expenses. Respondent argues that petitioner suffered no loss when R & B failed and that his efforts to make good Brendle's loss are nondeductible, voluntary personal expenditures made to satisfy a moral obligation. Respondent also argues that section 264(a) disallows any deduction for the payment of insurance premiums that directly or indirectly benefit petitioner. We agree with respondent solely on the latter ground. Petitioner's attempts to repay the losses suffered by his friend Brendle command our sympathy and our respect. But because petitioner had no investment in R & B Corporation, because he was not liable for any losses suffered by the corporation, and because he did not agree to reimburse Brendle until after R & B already had been liquidated, we are not at all convinced that in this case petitioner would be entitled to any deduction for payments to satisfy what was not a legal obligation. See generally Welch v. Helvering, 290 U.S. 111 (1933); Friedman v. Delaney, 171 F.2d 269 (1st Cir. 1948), *496 cert. denied 336 U.S. 936 (1949); White v. Commissioner, 61 F.2d 726 (9th Cir. 1932). Compare Milbank v. Commissioner,51 T.C. 805 (1969). Moreover, the purchase of collateral to secure a note generally is not a "payment" on the note which would produce a deduction based on the underlying obligation. See Helvering v. Price, 309 U.S. 409 (1940); ( Kuhn v. Commissioner, 34 B.T.A. 274 (1936). However, we need not decide those issues here because any deduction that might otherwise be available for petitioner's premium payments is clearly disallowed by section 264(a). Section 264(a)(1) [2] disallows any deduction for life insurance premiums paid where (1) the insured is an employee, officer, or is otherwise financially interested in the trade or business of the payor, and (2) the payor is directly or indirectly a beneficiary under the policy. Because the insured, petitioner, surely has an interest in his own welfare, the question presented is whether petitioner is directly or indirectly a beneficiary under the policy. *497 Here that question must be answered affirmatively. Since the earliest enactment of section 264(a)(1) and its statutory predecessors, [3] it has consistently been held that a taxpayer assigning an insurance policy on his life as security for a debt benefits to the extent that his personal obligations are thereby satisfied. Jefferson v. Helvering, 121 F.2d 16 (D.C. Cir. 1941), affg. 40 B.T.A. 274 (1939); Klein v. Commissioner, 84 F.2d 310 (7th Cir. 1936), affg. 31 B.T.A. 910 (1934); Rieck v. Heiner, 25 F.2d 453 (3d Cir.), cert. denied 277 U.S. 608 (1928); Glassner v. Commissioner, 43 T.C. 713 (1965), affd. per curiam 360 F.2d 33 (3d Cir.), cert. denied 385 U.S. 819 (1966); Parker v. Commissioner, 13 B.T.A. 115 (1928). Thus, if the proceeds of the policy in this case are used to pay off petitioner's note to Brendle, the liabilities of petitioner's estate will have been reduced and petitioner will have benefited. If on the other hand petitioner earlier pays off his note, the entire proceeds will be his to dispose of as he wishes. In *498 short, petitioner benefits under the policy no matter what happens. We therefore hold that under section 264(a) petitioner is denied any deduction for insurance premiums paid in 1975 and 1976.
Accordingly, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. SEC. 264. CERTAIN AMOUNTS PAID IN CONNECTION WITH INSURANCE CONTRACTS. (a) General Rule.--No deduction shall be allowed for-- (1) Premiums paid on any life insurance policy covering the life of any officer or employee, or of any person financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary under such policy.↩
3. Sec. 24(a)(4), Internal Revenue Code of 1939↩; sec. 215(d), Revenue Act of 1918, ch. 18, 40 Stat. 1057, 1069. See J. McCoy, Treasury Dept., An Analysis of the Revenue Bill of 1918, S. Doc. No. 391, 65th Cong., 3d Sess. 4 (1919).