CHARLES L. HUTCHINSON and ALYCE R. HUTCHINSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hutchinson v. Commissioner
Docket No. 4071-80.
United States Tax Court
T.C. Memo 1982-45; 1982 Tax Ct. Memo LEXIS 702; 43 T.C.M. (CCH) 440; T.C.M. (RIA) 82045; February 1, 1982. David S. Meyers and Ronald H. Lasko, for the petitioners. Kristine A. Roth, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined the following deficiencies in petitioners' *703 Federal income taxes: Tax Year Ended
Deficiency
1972
$ 9,515
1973
11,262
1974
3,670
1975
370
The sole issue for decision is whether a bad debt arising in 1975 out of a loan to petitioners' closely held corporation was a business had debt or a nonbusiness bad debt within the meaning of section 166(d). [1] Resolution of this issue will determine whether or not petitioners incurred a net operating loss in 1975 and were entitled to a carryback deduction attributable thereto in the years 1972, 1973 and 1974. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation together with the exhibits attached thereto are incorporated herein by reference. Petitioners Charles L. Hutchinson ("Hutchinson") and Alyce R. Hutchinson, husband and wife, resided in Fort Lauderdale, Florida, at the time they filed the petition in this case. They timely filed joint income tax returns for the taxable years 1972, 1973, 1974 and 1975. About 1948, Hutchinson began work for a shipyard *704 in Cleveland, Ohio. From there he joined a boat carrier vessel management firm and worked with that firm until it was liquidated in 1962. In 1964, Hutchinson purchased a controlling interest in The Matthews Company ("Matthews"), an Ohio corporation with its principal place of business in Port Clinton, Ohio. He paid in excess of $ 400,000 for such interest and received in return 4,845.5 of the 8,613 outstanding shares of common stock and 2,000 of the 2,800 outstanding shares of cumulative preferred stock of Matthews. From at least 1972 through 1975, Hutchinson held the offices of President, Treasurer and Chairman of the Board of Matthews.
Matthews engaged in the manufacture and sale of custom luxury yachts. During construction of a yacht, Matthews charged its customers progress payments at various stages of completion. This facilitated Matthews' cash flow position. During the period 1972 to 1975, Matthews held on average between $ 500,000 and $ 600,000 of customer deposits attributable to work in progress. Matthews began experiencing financial difficulties in the early 1970's, having a hard time meeting its payrolls and paying other creditors. At this time, Hutchinson approached *705 American Bank of Port Clinton seeking a loan. The bank declined to lend money to Matthews, but instead on March 3, 1972, agreed to loan $ 93,031 to Hutchinson personally. This loan was secured by stock owned by Hutchinson in various other corporations (but not stock in Matthews). Hutchinson advanced the proceeds of this loan directly to Matthews. The proceeds were used to meet Matthews' payroll (including Hutchinson's salary) and to pay off other outstanding debts. The funds also enabled the company to complete construction of certain pending boat contracts. At the end of 1971, Matthews' liabilities exceeded its assets by approximately $ 400,000. Hutchinsons' stock in Matthews at that time was of negligible value. In the years 1972, 1973 and 1974, Hutchinson received and reported wages from Matthews of $ 24,000, $ 25,799.97 and $ 25,384.50, respectively. These wages constituted roughly 60 percent of the gross income reported by petitioners on their joint returns in those years; the remaining amounts of gross income were primarily attributable to alimony, dividends and interest received.Petitioners did not report the receipt of any dividends from Matthews in 1972, 1973, *706 1974 or 1975. Matthews was declared bankrupt in 1975. At that time, Hutchinson's adjusted basis in his stock in the company was $ 442,275. While operating Matthews, Hutchinson became nationally known as an expert in the luxury yacht market, and his expertise, particularly in Matthews yachts, is sought after today. Following the demise of Matthews, Hutchinson formed a new corporation, Hutchinson & Co., in the same geographic vicinity as the former company. The new company, located in Huron, Ohio, operated as a yacht broker. Hutchinson, at the time of the trial, was employed as a yacht broker and sales representative in Fort Lauderdale, Florida, where his international clientele includes former customers of Matthews. Hutchinson was a prominent figure in Port Clinton, Ohio, at the time he advanced the funds to Matthews. Matthews was the second largest industrial employer in Port Clinton, a community having a population of about 7,000 people, in 1972. Hutchinson considered it important to his standing in the community that he be paid a salary by Matthews. On their 1975 tax return, petitioners reported a business bad debt deduction of $ 93,031 accompanied by the following *707 explanation: "Taxpayer guaranteed debt of Matthews Co., an Ohio corporation, to protect his position with the company. Matthews Co. declared bankrupt in 1975 and taxpayer paid loan principal of (sic) $ 93031 to American Bank, Port Clinton, Ohio." This deduction produced a net operating loss for petitioners in that year which they carried back in part to each of the three preceding years. On the same return petitioners claimed the following losses on their Matthews stock: Sales
Cost or
Gain or Loss
Price
Other Basis
Long Term
Matthews Co. - Common
242,275
-242,275
Matthews Co. - Preferred
200,000
-200,000
ULTIMATE FINDING OF FACT Hutchinson's dominant motive for advancing the funds to Matthews in 1972 was to protect his salary as an employee of Matthews. OPINION The sole issue for decision is whether Hutchinson's loan to Matthews which became worthless in 1975 was deductible as a business bad debt or a nonbusiness bad debt in that year. [2]
*708 Respondent maintains that Hutchinson's dominant motive in making the loan was not related to any trade or business of the petitioners. Rather, respondent contends the loan was made to protect Hutchinson's substantial investment in Matthews and to protect his social standing in the community. Petitioners, on the other hand, argue that Hutchinson's dominant motives were business-related -- viz., to protect Hutchinson's salary in his trade or business as an employee of Matthews and to protect his business reputation in the maritime industry. In order for the loss resulting from the worthlessness of a debt to de deductible as a business bad debt, there must be a proximate relationship between the loss and the trade or business of the taxpayer. Section 1.166-5(b), Income Tax Regs. In determining whether this relationship is present, the proper measure is that of the taxpayer's dominant motivation at the time the loan was entered into. United States v. Generes,405 U.S. 93 (1972); Smith v. Commissioner,60 T.C. 316, 318 (1973). *709 Petitioners assert that Hutchinson was involved in two distinct trades or businesses at the time he made the loans to Matthews: First, Hutchinson was in the trade or business of being an employee of Matthews - a proposition with which we fully agree. United States v. Generes,supra;Trent v. Commissioner,291 F.2d 669 (2d Cir. 1961), revg. 34 T.C. 910 (1960). Second, Hutchinson was in the trade or business of working in the marine or boating industry. This latter assertion deserves careful scrutiny. On this record we are unable to find that Hutchinson was engaged in any trade or business of working in the maritime industry in 1972 separate and apart from his trade or business as an employee of Matthews. Prior to 1964, Hutchinson had worked first in a shipyard and then in a boat carrier vessel management firm. It is unclear from his testimony what his duties and responsibilities were in such employments -- whether he was a stockboy, salesman, or even president -- or whether he ever dealt directly with the public. We lack any evidence of his employment from 1962 to 1964. In 1964 Hutchinson took over Matthews, a yacht manufacturer *710 and seller, and became its president. After 1975, Hutchinson became a yacht broker. It may be true that all of Hutchinson's employments have been in the maritime field (construing that term broadly) from 1948 to the present, yet this does not establish a separate trade or business distinct from each of his several jobs over that period. This record lacks any evidence that there was a continuity of job characteristics or clients over the several employments up to 1972. See Artstein v. Commissioner,T.C. Memo. 1970-220. In an attempt to establish some continuity, petitioners argue that Hutchinson became an expert in the luxury yacht field while working at Matthews and that former Matthews clients now seek out this expertise in his yacht brokerage business.It is true that Hutchinson had become known as an "expert" in the luxury yacht field by 1972, yet we have no evidence on which to find that at that time he was using his expertise for compensation apart from his use of it on behalf of Matthews; Hutchinsoin ran no yacht consulting business on the side in those years. See Lohrke v. Commissioner,48 T.C. 679 (1967) and cases cited therein. Thus, *711 petitioners' attempt to impart substance to this "maritime trade or business" must be rejected. The mere incantation by the taxpayer of the phrase "trade or business" does not magically transform one occupation into multiple occupations. [3] Consequently, we reject petitioners' argument that one of the motives of Hutchinson's loan was to protect his business reputation in the so-called maritime business. We next focus on Hutchinson's trade or business as an employee of Matthews.In determining the dominant business or nonbusiness motive of a controlling shareholder lending money to a corporation in which he is also an employee, courts look primarily to three objective factors: the size of the taxpayer's investment, the size of his after-tax salary and the *712 other sources of gross income available to the taxpayer at the time of the loan. United States v. Generes,supra;Scifo v. Commissioner,68 T.C. 714, 723 (1977); Shinefeld v. Commissioner,65 T.C. 1092 (1976); Smith v. Commissioner,supra. The larger the taxpayer's investment, the smaller his salary and the larger his other sources of gross income, the more likely are the courts to find a dominant nonbusiness motive for the loan. United States v. Generes,supra.
First, in the instant case, the size of Hutchinson's investment in Matthews was negligible. For purposes of applying the dominant motive test to stockholder-employees, the relevant figure is the fair market value of the taxpayer's investment at the time the loan was made. United States v. Generes,supra at 107; Hollingsworth v. Commissioner,71 T.C. 580, 585 (1979); Smith v. Commissioner,supra at 319-320. [4] We have found as a fact that at the time of Hutchinson's loan, *713 Matthews was in serious financial difficulty: The company's assets were insufficient to meet its liabilities. There was a net deficit in Matthews' equity account of roughly $ 400,000. Lenders would not advance any further funds to the company directly. These facts, coupled with American Bank of Port Clinton's acceptance of only non-Matthews stock as security for its loan to Hutchinson, lead to the conclusion that at the time of the loan the fair market value of Hutchinson's stock was at or near zero. Second, the amounts of salary withdrawn by Hutchinson in 1972, 1973 and 1974 (even after adjusting for their pretax character as required by United States v. Generes,supra), were substantial. Hutchinson reported and paid tax on wages of $ 24,000, $ 25,799.97 and $ 25,384.50, respectively, in each of those three years. Finally, the salary from Matthews constituted roughly 60 percent of petitioners' joint gross income in 1972, 1973 and 1974. The employment at that company was petitioners' only source of salaried income *714 in those years.
Given the facts that Hutchinson's investment in Matthews at the time of the loan was negligible, that his yearly salary from that company was substantial and that that salary constituted petitioners' only source of salaried income, we hold that the dominant motive of Hutchinson in making the loan to Matthews was the business-related motive of protectin Hutchinson's salary and not his investment. Respondent argues that Hutchinson had other motives in making the loan -- e.g., the protection of Hutchinson's social standing in the community. It may be true that Hutchinson had such other motives, and that such motives were "substantial" factors in inducing him to lend the money to Matthews. However, on this record we cannot find that these motives predominated. Since the dominant reason for making the loan was business-related, petitioners are entitled to a business bad debt deduction in 1975 (sec. 166(a)(1)), and a net operating loss carryback resulting therefrom in 1972, 1973 and 1974 (sec. 172(c)). Accordingly, Decision will be entered for the petitioners.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the years in issue, unless otherwise specifically indicated.↩
2. On brief, respondent argues for the first time that the advance from Hutchinson was actually an equity contribution to Matthews, not a loan. As this argument was not raised in the deficiency notice, the pleadings, the trial memoranda, cross-served by the parties prior to the commencement of the trial and filed by the Court as a part of the record, or the opening statements at trial, it is not properly before us. See Aero Rental v. Commissioner,64 T.C. 331, 338↩ (1975). Thus, we do not consider it.
3. A quotation from Shakespeare is perhaps apt: Glendower: I can call spirits from the vasty deep. Hotspur: Why, so can I, or so can any man; But will they come when you do call for them? Henry IV, Part I,↩ Act III, scene 1.
4. See also Carter v. Commissioner,T.C. Memo. 1979-447; Young v. Commissioner,T.C. Memo. 1974-76↩.