T.C. Memo. 2004-140

UNITED STATES TAX COURT

KENNETH W. AND FAYETTA GRAVES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7687-02.                    Filed June 15, 2004.

Kenneth W. and Fayetta Graves, pro sese.

<u>Jack H. Klinghoffer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Chief Judge</u>:  Respondent determined a $24,921

deficiency in petitioners' 1996 Federal income tax, a $5,818.25

addition to tax under section 6651(a)(1),[1] and a $4,865.20

_____

[1] Unless otherwise stated, all section references are to the
Internal Revenue Code in effect for the taxable year in issue.
All Rule references are to the Tax Court Rules of Practice and
Procedure.

accuracy-related penalty under section 6662.  After concessions, the issues remaining for our consideration are:  (1) Whether Kenneth W. Graves's (petitioner) bad debt, which arose in the course of his business as an employee, is deductible in computing adjusted gross income or an itemized deduction in computing taxable income; (2) whether the bad debt is $85,009 as determined by respondent or $86,040 as now claimed by petitioners; and (3) whether petitioners are liable for the addition to tax and penalty under sections 6651(a)(1) and 6662, respectively.

FINDINGS OF FACT[2]

Petitioners resided in San Dimas, California, on the date their petition was filed.  They filed a joint Federal income tax return for their 1996 taxable year.  With respect to their 1996 return, petitioners sought a filing extension to August 15, 1997.  No further extensions were sought after the expiration of the extension.  Twenty months later, on April 16, 1999, petitioners filed their 1996 Federal income tax return.  During 1996, petitioners received interest income.  Petitioner received pension income and unemployment compensation as well as a salary.  Mrs. Graves[3] received salary and miscellaneous income as an employee of two companies.

---

[2] The parties' stipulation of facts is incorporated by this reference.

[3] Mrs. Graves is a party in this case because petitioners filed a joint return for 1996.

Petitioner was the sole shareholder of KPS Trucking Co., Inc. (KPS), a corporation with 26 employees. He also was a salaried employee of KPS, managing its daily operations. Before 1996, KPS began experiencing financial difficulties. As a result, petitioner lent capital to KPS in an attempt to continue business operations and to pay salaries. Petitioner made six loans totaling $86,040.

KPS voluntarily filed for bankruptcy under chapter 7 of the Bankruptcy Code during July 1996, and the bankruptcy proceeding concluded on December 11, 1996. Petitioner's loans to KPS were the lowest in priority amongst the debts for payment, and there were insufficient assets in the estate to satisfy KPS's creditors. Upon the final discharge of KPS's debts, petitioner's loans remained unpaid and were worthless.

Petitioners reported an $84,734[4] loss attributable to the debt due from KPS on Schedule D, Capital Gains and Losses, of their 1996 return. Schedule D concerns the reporting of capital asset transactions. Petitioners also deducted the worthless debt on page 1, line 14 of their 1996 return. Line 14 is denominated "Other gains or (losses)". The parties disagree as to the treatment of the loss for tax purposes. Petitioners now contend that they should have claimed the bad debt as a deduction on

---

[4] Petitioners deducted $84,734 as a loss on their 1996 return but were able to substantiate $86,040 of loans at trial.

Schedule C, Profit or Loss From Business, to arrive at their adjusted gross income.

The loans were made in petitioner's trade or business of being an employee and were made to enable him to maintain his employment with KPS. Although petitioner claimed $84,734 as a business bad debt on his return, at trial he substantiated loans to KPS of $86,040.

Petitioners failed to report the following items of income on their 1996 income tax return:

| Income Item | Amount |
|---|---|
| Interest | $3,475 |
| State tax refund | 105 |
| Taxable pensions | 29,835 |
| Computational error | 10,000 |

On their January 9, 2002, notice of deficiency, respondent allowed $85,009 as a business bad debt deduction and treated it as an itemized deduction on Schedule A, Itemized Deductions. The amount respondent allowed is $275 greater than the amount petitioners claimed on their 1996 return.

## OPINION

The issues we consider arise from circumstances under which petitioner lent his solely owned corporation capital so that it could continue its operations, including the payment of salaries. Petitioner was a salaried employee of the corporation and was in the business of being an employee. The loans became worthless during the 1996 tax year, and petitioner claimed the loss in

connection with the computation of adjusted gross income. Respondent, on the other hand, allowed the loss as an itemized deduction in arriving at taxable income. There is also a dispute about whether the loss is $85,009 or $86,040. Finally, we must decide whether petitioners are liable for an addition to tax under section 6651(a)(1) and/or an accuracy-related penalty under section 6662.

Treatment of the Bad Debt

Section 166 provides that a business bad debt is deductible as an ordinary deduction for the year in which the debt becomes worthless. Specifically, section 166(a)(1) provides: "There shall be allowed as a deduction any debt which becomes worthless within the taxable year." Section 166(d)(1)(A) further provides that in the case of a taxpayer other than a corporation "subsection (a) shall not apply to any nonbusiness debt". Section 166(d)(2)(A) and (B) defines a nonbusiness debt as a debt other than:

> (A) a debt created or acquired * * * in connection with a trade or business of the taxpayer; or

> (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

Therefore, subsection (a) allows an ordinary loss deduction only for business bad debts.

Taxpayers bear the burden of showing entitlement to deductions and must show that a bona fide debt existed and that the debt became worthless in the year claimed.[5]  See sec. 166; Rule 142(a); <u>Dixie Dairies Corp. v. Commissioner</u>, 74 T.C. 476, 493 (1980).  The existence of a bona fide debt can be shown by proof of a "debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money."  Sec. 1.166-1(c), Income Tax Regs.; see <u>Dixie Dairies Corp. v. Commissioner</u>, <u>supra</u>.  Whether a bona fide debtor-creditor relationship exists is a question of fact to be determined upon a consideration of the relevant facts and circumstances.  See <u>Fisher v. Commissioner</u>, 54 T.C. 905, 909 (1970).

It is established that being an employee may be a trade or business for purposes of section 166.  <u>Trent v. Commissioner</u>, 291 F.2d 669 (2d Cir. 1961), revg. 34 T.C. 910 (1960).  It may be necessary for an employee to lend money to an employer to maintain the employee's employment.  In this case, maintaining his employment was petitioner's dominant motivation.  Accordingly, petitioner made the loans in his trade or business of being an employee for purposes of section 166.  Cf. <u>id.</u>

---

[5] No question has been raised with respect to the burden of proof or production under sec. 7491(a).

Respondent concedes that petitioner's loans were bona fide debts that arose in the course of his trade or business of being an employee of KPS. The parties stipulated that petitioner made the loans to maintain his employment with KPS. The loans became worthless during 1996 because of the bankruptcy of KPS. Finally, petitioner was not in the trade or business of lending money; rather, he was in the trade or business of operating a trucking company.

In the notice of deficiency, respondent allowed $85,009 as a bad debt deduction. However, petitioner is now claiming $86,040 for the bad debt deduction.[6] The remaining question is whether the bad debt should be allowed as a deduction from gross income to arrive at petitioners' adjusted gross income, or is to be treated as an itemized deduction in computing their taxable income.[7]

_____

[6]The discrepancy between $85,009 and $86,040 will be addressed later in the opinion.

[7] The significance of the parties' dispute lies in the fact that itemized deductions are limited by certain thresholds and restrictions, whereas deductions used to arrive at adjusted gross income are not. In particular, an itemized deduction in the setting of this case would be subject to the 2-percent floor under sec. 67.

Respondent relies on section 62 and the related regulations in contending that bad debt deductions in connection with the trade or business of being an employee are treated as itemized deductions. Section 62 provides in part:

> SEC. 62(a). General Rule.--For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

> (1) Trade and business deductions.--The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee. [Emphasis added.]

The statute provides, with exceptions none of which are applicable here, that a taxpayer may not deduct as a trade or business deduction items connected with the performance of services as an employee. The parties stipulated that petitioner's trade or business of operating KPS consisted of his performance of services as an employee. Under the statute, items connected with the performance of those services are not deductible in arriving at adjusted gross income.

Section 1.62-1T(d), Temporary Income Tax Regs., 53 Fed. Reg. 9874 (Mar. 28, 1988), further amplifies this point as follows: "For the purpose of the deductions specified in section 62, the performance of personal services as an employee does not constitute the carrying on of a trade or business, except as otherwise expressly provided." Because petitioner's trade or

business consists of the performance of services as an employee,
he may not deduct the business bad debt to arrive at adjusted
gross income under section 62.  Accordingly, petitioner's
business bad debt must be treated as an itemized deduction under
section 63(d).

Because the business bad debt is deductible as an itemized
deduction, it is subject to the 2-percent floor under section 67.
Section 67(a) provides in pertinent part:  "In the case of an
individual, the miscellaneous itemized deductions for any taxable
year shall be allowed only to the extent that the aggregate of
such deductions exceeds 2 percent of adjusted gross income."
Section 67(b) defines miscellaneous itemized deductions as
itemized deductions that are not listed therein.  Section 166
business bad debts are not listed under section 67(b).
Therefore, we hold that petitioner's business bad debt deduction
is a miscellaneous itemized deduction and is subject to the 2-
percent floor under section 67.

Amount of Business Bad Debt

We next consider the amount of petitioner's business bad
debt deduction.[8]  The parties disagree on the amount to be
deducted.  Petitioners initially deducted $84,734 on their
Federal income tax return.  After examination, respondent allowed

---

[8] As previously noted, no question has been raised with
respect to the burden of proof or production under sec. 7491(a).

$85,009.  Petitioners are now claiming $86,040 for the business bad debt deduction.

Petitioners contend that an amended return was sent to the Internal Revenue Service claiming $86,040 for the business bad debt on Schedule C and correcting the pension income.  Respondent has no record of receiving the amended return.  Irrespective of whether an amended return was filed, petitioners bear the burden of showing the amounts of deductions.  Specifically, petitioners bear the burden of proving they are entitled to the deductions claimed.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Higbee v. Commissioner, 116 T.C. 438, 440 (2001).

Respondent allowed an $85,009 business bad debt deduction in the notice of deficiency.  That allowance was $275 more than the $84,734 petitioners claimed on their original return.  At trial, petitioner, by means of testimony and documents, substantiated that the loans to KPS totaled $86,040.  On the basis of this evidence, we hold petitioners are entitled to a deduction for the business bad debt in the amount of $86,040.

Addition to Tax and Accuracy-Related Penalty

Respondent determined an addition to tax under section 6651(a)(1) and an accuracy-related penalty under section 6662(a). Section 7491(c) requires the Commissioner to carry the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional

amount. To meet this burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. See Higbee v. Commissioner, supra. If the Commissioner carries this burden, taxpayers then bear the burden of showing that the addition or penalty does not apply; i.e., that there was reasonable cause, substantial authority, etc. Id.

Petitioners failed to timely file their 1996 return. In order to be relieved of the addition to tax, petitioners must establish that their failure was due to reasonable cause and not willful neglect. Id.; see sec. 6651(a)(1). Reasonable cause is shown when "the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time". Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioners' 1996 return was due on August 15, 1997, upon expiration of their filing extension. Petitioners did not request a second extension. Instead, petitioners contend they were not able to file their return until April 16, 1999, because they were waiting for the final loss figure from the KPS bankruptcy proceeding. Petitioners' argument falls short, however, because they knew the amount of the loans made to KPS. In addition, petitioners could have filed a timely return and later amended it if the information changed for any reason,

including some event in the bankruptcy proceeding. Petitioners have not shown reasonable cause for their failure to timely file. Respondent has met his burden of production with regard to this addition to tax. Accordingly, we hold petitioners are liable for the addition to tax under section 6651(a)(1).

Respondent also determined petitioners are subject to a penalty under section 6662(a). This penalty is imposed on any portion of an underpayment of tax required to be shown on a return when the underpayment is due to negligence or disregard of rules or regulations, or a substantial understatement of income tax. See sec. 6662(a) and (b).

A substantial understatement of tax is defined as an understatement of tax that exceeds the greater of 10 percent of the tax required to be shown on the tax return or $5,000. See sec. 6662(d)(1)(A)(i) and (ii). The understatement may be reduced by an amount attributable to any item for which there was adequate disclosure and a reasonable basis for which there was substantial authority. See sec. 6662(d)(2)(B). Section 6662(c) defines negligence as "any failure to make a reasonable attempt to comply with the provisions of this title", and disregard means any "careless, reckless, or intentional disregard."

Respondent relies on the record, which reflects that there was a substantial understatement in this case. That satisfies respondent's burden of production as to the substantial

understatement penalty.  Accordingly, petitioners must show that the accuracy-related penalty should not be imposed with respect to any portion of the understatement for which they acted with reasonable cause and in good faith.  See sec. 6664(c)(1); Higbee v. Commissioner, supra at 448.  The decision as to whether petitioners acted with reasonable cause and in good faith is one that depends on all the facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.  An honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith.  See Higbee v. Commissioner, supra at 449 (citing Remy v. Commissioner, T.C. Memo. 1997-72).

Petitioner was a truck driver who was able to gradually purchase more equipment and hire employees to drive the trucks.  Petitioner's skills are in the trucking business.  Petitioner attempted to complete his own tax return for 1996.  His confusion as to how to properly complete the form is evidenced by his use of Schedule D, which is used for reporting capital gains and losses.  Under section 1211(b), which applies to capital gains and losses, petitioner would have been limited to a $3,000 deduction.  Petitioner intended to claim a bad debt deduction of $86,040.

Petitioner was forthright and fully disclosed the amount of the business bad debt.  Petitioner made an honest and good faith

attempt at accurately reporting the bad debt. The fact that petitioner mistakenly placed the $86,040 deduction on the wrong line on the first page of the 1996 return corresponds with his confusion in using Schedule D. On the basis of petitioners' position and their reporting on page 1 of their 1996 return, they should have reported the loss on Schedule C. Even if petitioners had used a Schedule C, respondent contends that they would have been negligent because the loss should have been shown on a Schedule A as an itemized deduction.

In light of petitioner's educational background, the circumstances of this case, and the multiplicity of possibilities for claiming business bad debts, petitioner has shown good faith and reasonable cause for the way he reported the bad debt deduction. We hold that the accuracy-related penalty does not apply to the portion of the understatement attributable to the adjustment concerning the bad debt.

Petitioners concede that they failed to report income from interest, a State tax refund, and pensions in the total amount of $33,415, resulting in a substantial underreporting of income. Petitioners further concede that they "missed" or overlooked Forms 1099 with the result that they underreported income.

The unreported income was substantial in amount because the understatement of income tax exceeds the greater of 10 percent of the tax required to be shown on the tax return or $5,000. The

tax shown on the 1996 return was $1,174. The tax required to be shown on the return was $26,095. Ten percent of $26,095 is $2,609.50. The amount of the understatement of tax on petitioners' return is $24,921. Respondent has therefore demonstrated that petitioners have substantially understated their income tax for 1996.

Further, according to the regulations, negligence includes "any failure by the taxpayer to keep adequate books and records". Sec. 1.6662-3(b), Income Tax Regs. In this instance petitioners were negligent by failing to keep adequate books or records and report the income items. Therefore, on the basis of substantial understatement of income tax and petitioners' failure to keep adequate records, the accuracy-related penalty applies to the tax on $33,415 of underreported income.

Petitioners concede that they made a $10,000 computational error on their original return which resulted in an underreporting of income. This computational error resulted in a 32.88-percent understatement of the income petitioners reported. Petitioners have not provided a reasonable explanation for the resulting portion of the understatement of income tax or shown that they exercised reasonable care in the preparation of their tax return. See sec. 1.6662-3(b)(1), Income Tax Regs. Accordingly, petitioners are liable for the accuracy-related penalty with regard to the $10,000 error.

Petitioners also concede that they erroneously deducted self-employment tax.  The regulations provide that negligence is shown when "A taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction * * * on a return which would seem to a reasonable and prudent person to be 'too good to be true' under the circumstances".  See sec. 1.6662-3(b)(1)(ii), Income Tax Regs.  In these circumstances, petitioners did not report any self-employment tax on their return, nor did they attach the requisite schedule for such tax.

Petitioners have not provided a foundation or predicate for claiming a self-employment tax deduction.  It was not reasonable for them to claim a deduction for self-employment tax. Accordingly, petitioners are liable for the section 6662 accuracy-related penalty with respect to the amount of the understatement of income tax attributable to the self-employment tax deduction.

We have considered all of petitioners' arguments, and to the extent that they are not mentioned herein, we find them to be moot or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.