D. J. CONDIT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 88168. Filed April 10, 1963

*Lowry McKee,* for the petitioner.
*J. C. Linge,* for the respondent.

FISHER, *Judge:* Respondent has determined a deficiency of $2,238.31 in petitioner's income tax for 1957. The sole question in issue is whether petitioner is entitled to an ordinary loss deduction on account of the transfer by him to the extent of $6,100 of his interest in a note and 50 shares of stock of The Dorman Co. made in connection with settlement of affairs of John E. Burks, Inc., which latter company was insolvent.

FINDINGS OF FACT

Petitioner is a resident of Tulsa, Okla. His return for 1957 was filed with the director of internal revenue at Oklahoma City.

In 1954, petitioner and a business acquaintance, Raymond B. Conard, were considering going together into some kind of business enterprise. Petitioner was a manufacturer's representative and Conard was in the general construction business. Petitioner and Conard

finally decided to open a Western Auto Associate Store. The store was built on land owned by Conard. A third party, John E. Burks, was engaged to act as store manager and for his services was to receive a small salary plus one-third of the store profits.

Petitioner and Conard first considered forming a partnership or joint venture to operate the store. They agreed (and have continued to agree during all periods here relevant) that they would share profits and losses equally. On advice of their counsel, however, they decided to organize two separate corporations, one, the Dorman Co., to hold title to the land, and the other, John E. Burks, Inc., to operate the store. Their reasons for separate corporations were to isolate each of the corporations from the risks of the other and to limit their own individual liability.

John E. Burks, Inc., hereinafter referred to as Burks, Inc., was incorporated January 3, 1955, and the Dorman Co. on March 9, 1955. Each of the companies issued 150 shares of $10 par value stock. Petitioner, Conard, and Burks each paid in $500 to each corporation and received 50 shares of the stock each. Conard loaned Burks the money for his investment in the stock.

Title to the land and store building, known as 3120 South Winston Street, Tulsa, Okla., was conveyed to the Dorman Co. and the store was opened for business about April 1, 1955. Petitioner loaned the Dorman Co. $10,500 in cash and received a promissory note of the Dorman Co. for that amount secured by a second mortgage on its property. Burks, Inc., borrowed on its own promissory notes $30,000 from Brookside State Bank at Tulsa, and $6,000 from Maud C. Boswell. Both petitioner and Conard were personally liable on these notes.

The store was unsuccessful from the beginning. It sustained operating losses of $9,352.92 in 1955, and $33,845.99 in 1956. In February 1956, petitioner decided that the business was a failure and told Conard that he wanted to close it down before more losses were incurred. Conard was more optimistic and wanted to continue a while longer. By August 1956 he too was ready to accept failure and it was decided to liquidate the business. Burks gave up the management of the store in June 1956 and assigned his shares of stock in Burks, Inc., and the Dorman Co. to Conard, who had loaned him the money to purchase them. Thereafter, the books and records of Burks, Inc., were kept by Conard who supervised the liquidation.

In the meantime Conard, personally, had made cash advances to Burks of $17,600, of which $10,000 had been advanced after February 1956, when petitioner first suggested closing down the business. Petitioner had not guaranteed repayment of any of the $17,600 advanced by Conard.

In December 1956, petitioner made a payment of $6,600 to Brookside State Bank on his liability on the Burks, Inc., note and wrote Conard the following letter—

DECEMBER 28, 1956.

MR. R. B. CONARD,
*3316 South Urbana,*
*Tulsa, Oklahoma*

DEAR RAY: Even though we have not as yet definitely determined my share of the loss in our Western Auto venture, I am, for personal reasons, making a payment on the note we have endorsed at the Brookside State Bank during the calendar year 1956.

This payment will be in the amount of six thousand and six hundred dollars ($6,600.00).

I wanted you to know that this payment was being made so that full credit for it could be realized when the exact amount of my own losses is calculated.

I sincerely hope that 1957 turns out to be a most satisfactory year for you and yours in all ways.

Sincerely,

In his income tax return for 1956 petitioner deducted the $6,600 paid to Brookside State Bank as a nonbusiness bad debt and also claimed a long-term capital loss deduction of $500 on his 50 shares of Burks, Inc., stock. These deductions are not at issue in this proceeding.

On February 19, 1957, petitioner and Conard entered into an agreement providing as follows:

### AGREEMENT

In consideration of the mutual covenants herein expressed, D. J. Condit and Ray Conard of Tulsa, Oklahoma, do hereby agree as follows:

The parties have been associated since about January 1, 1955, jointly as stockholders and as creditors of John E. Burks, Inc., a corporation formed for the purpose of operating a Western Auto Association store at 31st and Winston, in Tulsa, Oklahoma, and, since March, 1955, as stockholders and creditors of the Dorman Company, a corporation formed for the purpose of owning and renting the building located at the same address.

The operation of the Western Auto store has resulted in a substantial loss, which cannot be precisely determined at this time, but which the parties, for the purpose of this agreement, stipulate to be $47,000.00. This amount consists of the following:

| | |
|---|---:|
| Final balance of Brookside State Bank loan, after application of all funds, now in bank or collectible on Accounts Receivable. Estimated to be | $20,000.00 |
| Balance on Boswell loan, including accrued interest | 5,800.00 |
| Loans by Ray Conard | 17,600.00 |
| Estimated amount of loss on amount due Western Auto, less collections to be made on contracts | 3,600.00 |
| | 47,000.00 |

Condit has made known his desire to discontinue the business before Conard was willing to do so. For this reason, it was agreed that Condit should not

share in losses by Conard of money advanced by him after Condit expressed a desire to discontinue the business. The sum advanced by Conard after said date was agreed to have been $10,000.00, leaving a loss of $37,000.00 which the parties hereby agree to share equally.

It is agreed that Condit will bear his one-half of the loss of $37,000 in the following manner:

| | |
|---|---:|
| By payment on the Brookside State Bank note | $6,600.00 |
| By assumption in full of the principal balance of the Boswell note, together with accrued interest | 5,800.00 |
| By a reduction in his receivable of $10,500.00 advanced in exchange for a second mortgage on The Dorman Company property | 6,100.00 |
| | 18,500.00 |

Conard agrees to bear his share of the loss in the following manner:

| | |
|---|---:|
| By payment of the balance of the Brookside State Bank note after application of company funds. Estimated to be | $13,400.00 |
| By paying final amount to Western Auto Company, less collections on contracts. Estimated to be | 3,600.00 |
| By personal advances to the company | 7,600.00 |
| Total | 24,600.00 |
| Less advantage gained by reduction in second mortgage of The Dorman Company held by Condit | 6,100.00 |
| Remainder | 18,500.00 |

Condit agrees to assign his stock in John E. Burks, Inc., and The Dorman Company to Conard. Conard agrees to attend to the final liquidation of John E. Burks, Inc. and make settlement with Western Auto Company and all others involved, and agrees that Condit is hereby released of all further responsibility of any kind whatsoever and shall be held harmless by Conard for any costs or expenses, other than that agreed to herein, which he may be required to pay by reason of the existence or operation of John E. Burks, Inc. and The Dorman Company.

IN WITNESS WHEREOF, the parties have affixed their signatures hereto this 19 day of February, 1957.

(S)   D. J. Condit
D. J. CONDIT
(S)   Ray Conard
RAY CONARD

Petitioner and Conard knew that Burks was not in a financial position to bear any part of the losses of the store for which he might be held liable. No part of such losses has ever been paid by him.

In the final liquidation of Burks, Inc., Conard was required to pay Western Auto Stores $400 more than the $3,600 estimate referred to in the February 19 agreement. He, Conard, spent about 200 hours of working time in liquidating Burks, Inc.

The fair market value in 1957 of the 50 shares of stock of The Dorman Co. assigned by petitioner to Conard pursuant to the agreement of February 19, 1957, was $250.

Also, pursuant to the February 19, 1957, agreement, petitioner made payments on the Boswell note of $1,409.92 in 1957, and, thereafter, monthly payments of $100 each.

In his 1957 return, petitioner deducted the payments made on the Boswell note as short-term capital losses and deducted the $6,100 which he had transferred to Conard as part of his interest in the principal amount of the Dorman Co. note and the $500 cost of the Dorman Co. stock in full as losses in connection with a transaction entered into for profit.

OPINION

The only question in issue here is whether the $6,100 item, representing part of the Dorman Co. note, and the $500 item, representing the cost to petitioner of the 500 shares of the Dorman Co. stock, both of which petitioner assigned to Conard in 1957, in settlement of the obligations of Burks, Inc., are deductible in petitioner's return for that year.

Petitioner alleges in his petition that respondent erred in determining that the loss from these assignments to Conard was reportable as a nonbusiness bad debt rather than an ordinary loss as claimed. Petitioner contends in his brief that the loss is deductible in full under section 165(c)(2) as a loss incurred in a transaction entered into for profit.

Respondent contends that petitioner's losses were nonbusiness bad debt losses or, in the alternative, that the payments in question were capital contributions to Burks, Inc.

Section 165(c)(1), (2) permits the deduction of (1) losses incurred in a trade or business; and (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * *. Subsection 166(d) limits the deduction of nonbusiness bad debts by an individual to that allowed on short-term capital loss and (d)(2) defines a nonbusiness bad debt as—

(d) NONBUSINESS DEBTS.—

\* \* \* \* \* \* \*

(2) NONBUSINESS DEBT DEFINED.—For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than—

(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or

(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

Respondent relies on *Putnam* v. *Commissioner*, 352 U.S. 82 (1956), in support of his determination that the assignments to Conard resulted in nonbusiness bad debts. The *Putnam* case holds that a loss

resulting from a payment by a stockholder in satisfaction of his liability as guarantor of the corporation's note is a nonbusiness bad debt loss deductible as a short-term capital loss. We do not think that the case is applicable here. The amounts in dispute here were not payments made in satisfaction of petitioner's liability as guarantor of Burks, Inc.'s obligations, but were made to Conard in satisfaction of petitioner's liability to him for one-half of the losses arising out of the transaction.

The total amount of the unpaid guaranteed notes on which petitioner and Conard were jointly liable was $25,800. Petitioner's one-half of such notes was $12,400 which was the amount of Brookside State Bank and Boswell notes assumed and later paid by petitioner. That left $6,100 of petitioner's $18,500 liability, the exact amount of the interest of petitioner transferred to Conard in the Dorman Co. note under the agreement of February 19, 1957.

The $6,100 interest in the Dorman Co. note had been acquired by petitioner as security for a loan by petitioner to the Dorman Co., and petitioner assigned the part interest in the note to Conard, along with the 50 shares of the Dorman Co. stock in part payment of his obligation to pay one-half of the loss on Burks, Inc. (The Dorman Co. held title to the land and building occupied by Burks, Inc. It was not otherwise involved in the liquidation of Burks, Inc.)

We think it clear on the record that petitioner, as far as the $6,100 assignment, and the transfer of the Dorman stock was concerned, was not paying off an obligation as a guarantor and that he was not entitled to subrogation. It is our view, therefore, as already stated, that *Putnam, supra,* is not here applicable.

We have no doubt that petitioner and Conard entered into the transaction for profit. Under the circumstances, while admittedly not precisely in point, we think that the governing principles are to be found in *J. J. Shea,* 36 T.C. 577 (1961), on appeal (C.A. 5) and *Majorie Fleming Lloyd-Smith,* 40 B.T.A. 214 (1939).

Under the circumstances we hold that petitioner is entitled to deduct his transfer of $6,100 to Conard in full as a loss incurred in a transaction entered into for profit under section 165(c)(2).

The amount of petitioner's loss on the assignment of his Dorman Co. stock to Conard, however, was not $500, the cost of the shares to him, but $250, the stipulated value of the shares at the time of the assignment. Only to that extent was there any loss on the transfer from petitioner to Conard in satisfaction of petitioner's obligation to Conard. Since no issue of capital loss has been raised by the pleadings, we have no occasion to consider further the transfer of the stock, but the issue would, in any event, be *de minimis.*

*Decision will be entered under Rule 50.*