*Decision will be entered under Rule 50.*

EUGENE H. RIETZKE AND LILLIE LOU RIETZKE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 91484. Filed May 29, 1963

*Leonard L. Silverstein* and *Gerald H. Sherman*, for the petitioners. *W. Ralph Musgrove*, for the respondent.

---

[11] U.S. Const., art I, secs. 2 and 9,
[12] U.S. Const., amend. V,

OPINION

KERN, *Judge:*

## Issue 1

The primary question to be decided is whether the payments made by petitioner to Commerce, Fidelity, and National Bank give rise to deductions for losses incurred in a trade or business or losses incurred in a transaction entered into for profit though not connected with a trade or business,[1] or expenses incurred for the production of income.[2]

---

[1] Sec. 23(e) (1) and (2), I.R.C. 1939, and sec. 165(c) (1) and (2), I.R.C. 1954.

[2] Sec. 23(a) (2), I.R.C. 1939, and sec. 212, I.R.C. 1954.

or whether they constitute business bad debt deductions, or are deductible only as nonbusiness bad debts.[3]

Respondent contends that the payments give rise to bad debt deductions instead of losses deductible under other provisions of the internal revenue laws. Respondent further contends that the bad debts are deductible only as nonbusiness bad debts and therefore must be treated as a loss from the sale of a capital asset held for not more than 6 months.

Petitioner concedes that by the payments made pursuant to his endorsement of Lacy's obligation to National Bank he became subrogated to National Bank's creditor rights against Lacy's and that such payments could only be deducted under the bad debt provisions of the Internal Revenue Code of 1954. It is argued, however, that the losses sustained on the National Bank note are deductible as business bad debts incurred in petitioner's trade or business. With respect to the losses sustained on the payments to Fidelity and Commerce under the settlement agreement of December 28, 1953, petitioner's primary contention is that the losses are deductible under the provisions of section 23(e) of the Internal Revenue Code of 1939 and section 165(c) of the Internal Revenue Code of 1954. In the alternative, petitioner contends that, if respondent properly determined that petitioner's losses upon the payments made to Fidelity and Commerce constituted bad debts, then such bad debts are deductible as ordinary losses as business bad debts incurred in petitioner's trade or business.

We shall first consider the losses sustained with respect to the payments made on the National Bank note. Petitioner contends that his activities as an employee in securing financing for Lacy's and endorsing its obligations constituted his trade or business and that, consequently, the bad debts resulting from his subrogation to these obligations constituted debts "incurred in the taxpayer's trade or business" and were deductible in full.

Petitioner in his argument relies heavily on *Trent* v. *Commissioner*, 291 F. 2d 669, reversing 34 T.C. 910.

In the recent case of *Whipple* v. *Commissioner*, 373 U.S. 193, the Supreme Court expressly refrained from either approving or disapproving the *Trent* case, but in its opinion it indicated that it considered the *Trent* case to be inapplicable where "there is no proof * * * that the loan [giving rise to the claimed business bad debt] was necessary to keep his [the employee's] job or was otherwise proximately related to *maintaining* his trade or business as an employee." (Emphasis supplied.)

On the record before us we are unable to conclude that the petitioner, upon whom the burden of proof rests herein, has proved that he was required to guarantee these loans in order to keep his job or to *main-*

---

[3] Sec. 23(k) (1) and (4), I.R.C. 1939, and sec. 166 (a) and (d), I.R.C. 1954.

*tain* his trade or business as an employee. There is no proof that the guaranteeing of corporate loans was a required duty of petitioner as chairman of the board or that Lacy's took corporate action requesting him to do so. There is only the broad testimony that as chairman he was charged with the responsibility of arranging for the financing of Lacy's.

We point out that petitioner had for all practical purposes a considerable proprietary interest in Lacy's by reason of his stockholding in Capitol Radio, and was substantially, even though indirectly, the beneficiary of dividend payments in the amount of $129,000 paid by Lacy's to Capitol Radio. We are unable to conclude that petitioner has successfully borne his burden of proving that this proprietary interest did not provide the dominant motive in his making the guarantees here in question. See *George P. Weddle*, 39 T.C. 493, 498.

We shall next consider the losses sustained with respect to the payments made to Fidelity and Commerce pursuant to the contract executed on December 28, 1953. It is well settled that deductions for bad debts are governed by sections 23(k) and 166 of the Internal Revenue Codes of 1939 and 1954, respectively. If a taxpayer's loss results from the worthlessness of a debt then other provisions of the internal revenue laws relating to deductions for ordinary losses are not applicable. *Spring City Foundry Co.* v. *Commissioner*, 292 U.S. 182.

In *Putnam* v. *Commissioner*, 352 U.S. 82, the Supreme Court held that a loss sustained in discharge of an obligation as guarantor was a nonbusiness bad debt to be given short-term capital loss treatment. In so holding, the Court stated at page 85:

> The familiar rule is that, *instanter* upon the payment by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor, not a new debt, but, by subrogation, the result of the shift of the original debt from the creditor to the guarantor who steps into the creditor's shoes.

It may also be stated as a general rule that a person is not entitled to be subrogated to the rights of a creditor until the claim of the creditor against the debtor has been paid in full. *American Surety Co.* v. *Electric Co.*, 296 U.S. 133. This rule obtains in New Jersey, the State in which the contract of December 28, 1953, was executed. See *Daily* v. *Somberg*, 28 N.J. 372, 146 A. 2d 676. The rationale of this rule protects the creditor so that he may obtain full satisfaction of the debt. If the guarantor who made a partial payment were subrogated *pro tanto* he would hold a position of equality with the holder of the debt for which the guarantor is bound, and the loss may then fall equally upon the creditor and the guarantor. Accordingly, a guarantor liable only for part of a debt does not become subrogated to remedies available to a creditor unless he pays the whole debt or it

is otherwise satisfied. See *United States* v. *National Surety Co.*, 254 U.S. 73.

Thus petitioner could obtain no right of subrogation against Lacy's until the claims of the creditors, Fidelity and Commerce, were satisfied. Pursuant to the contract of December 28, 1953, between petitioner on the one hand and Fidelity and Commerce on the other, petitioner only paid $100,000 in settlement of claims of the banks which aggregated $200,000 and possibly more if the purchasers of merchandise defaulted on their obligations. In addition to the $100,000 received by the banks, they obtained a covenant from petitioner whereby he would not enforce his claim for damages against Commerce for its alleged negligence in passing on credit and in handling collections from purchasers of merchandise, and they retained the right to pursue their claims against Lacy's in the bankruptcy proceeding. The contract specifically provided that any dividends paid in the bankruptcy proceeding on the claims of Fidelity and Commerce would be their sole and absolute property without any right therein by petitioner. Under these circumstances it is clear that petitioner did not acquire a right of subrogation and therefore there was no debt owed to him.

Respondent argues that the payments were made as a direct result of petitioner's guaranteeing the corporate obligations, and therefore such payments must be deducted under the bad debt provisions of the internal revenue laws. In the case of *Estate of Dominick F. Pachella*, 37 T.C. 347, affd. 310 F. 2d 815, we held that a loss sustained by a guarantor of a corporate obligation was a loss from the worthlessness of a debt. We noted, however, "that the deduction is allowed not because of the payment but because the payment gives rise to a claim which if worthless constitutes a bad debt." Inasmuch as there was less than full payment of the debts owed to Fidelity and Commerce in the instant case, and since petitioner obtained no right of subrogation in law or by contract, the payments he made pursuant to the contract of December 28, 1953, do not fall within the ambit of the bad debt provisions of the internal revenue laws.

We believe that petitioner's losses are deductible under the provisions of section 23(e)(2) of the Internal Revenue Code of 1939 and section 165(c)(2) of the Internal Revenue Code of 1954. These sections provide that an individual may deduct losses incurred in a transaction entered into for profit, though not connected with a trade or business. Petitioner gave his endorsements and lent his credit to Lacy's with the expectation that Lacy's use of the funds provided by his guarantees would increase his receipts from the corporation in the form of salary and the value of the proprietary interest which he had in Lacy's by virtue of his stockholding in Capitol Radio. We have held that such activities constitute transactions entered into for profit,

*J. J. Shea*, 36 T.C. 577, 582, on appeal (C.A. 5, 1961) ; *Harry Horner*, 35 T.C. 231, 236, and we so hold here.

*Issue 2*

In 1956 petitioner was paid $13,300 by Capitol Radio, based on petitioner's claim for reimbursement for the costs of entertaining employees and their families in his home and also doing public relations work for the company. The issue before us is whether the sum of $13,300 constitutes taxable income to petitioner.

Respondent contends that petitioner has been allowed deductions on his returns for the years 1953 through 1956 in the amounts to which he substantiated his expenditures on behalf of Capital Radio. Therefore any reimbursements from the company are required to be included in petitioner's gross income, and the excess of reimbursements over proven and allowable expenditures constitutes taxable income.

It is petitioner's contention that the sum of $13,300 was expended by him on behalf of Capitol Radio. Petitioner argues that in effect he advanced money to Capitol Radio which it paid back in 1956. The payment made by Capitol Radio to petitioner was therefore no more than the liquidation of a debt due petitioner from which no income was realized.

We agree with respondent. Petitioner must include in his gross income the reimbursements he received from his employer. Sec. 61(a), I.R.C. 1954. Only amounts received from an employer which are actually expended for the employer's business or for the business purposes designated by the employer may be deducted from the gross income of the employee. Sec. 62, 1954 Code. The burden of proving such expenditures and the amounts thereof is of course on petitioner. Petitioner here seeks to exclude the $13,300 received from gross income by alleging the sum constituted the liquidation of an advancement. The petitioner relies on the fact that the company's board of directors paid the amount claimed when it refused to pay similar claims in the past, and on the testimony of a corporate officer who did not know the amount petitioner spent for entertainment on behalf of Capitol Radio to the effect that he thought that the claim for $13,300 was reasonable. This evidence is not sufficient to warrant a finding that petitioner spent $13,300 on behalf of Capitol Radio in addition to the amounts which he has already deducted. In this connection we note that petitioner has acquiesced in the respondent's determination that he was entitled to deductions of only $900 in each of the years 1953 through 1956. We conclude that petitioner has not proved that the amount received by him from Capitol Radio did not exceed his expenditures on behalf of the company and that such excess does not constitute taxable income to petitioner. *Williams* v. *United States*, 245 F. 2d 559 ; *Walter I. Geer*, 28 T.C. 994.

*Decision will be entered under Rule 50.*