CLENTE A. BEVITORI AND LINDA C. BEVITORI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bevitori v. Commissioner
Docket No. 540-81.
United States Tax Court
T.C. Memo 1983-530; 1983 Tax Ct. Memo LEXIS 254; 46 T.C.M. (CCH) 1223; T.C.M. (RIA) 83530; August 29, 1983. *254 Held: Understatement of income and additions to tax under I.R.C. 1954 sec. 6653(b) determined. O. Christopher Meyers, for the petitioners. Patrick E. McGinnis, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACTS AND OPINION WHITAKER, Judge: Respondent determined deficiencies in income taxes and additions to tax for the years and in the amounts as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
1971
$1,238.69
$1,082.68
1972
5,383.63
2,758.60
1973
9,544.54
8,052.59
1974
5,600.65
3,217.44
*255 The principal issues for decision are whether petitioners understated their gross income on their income tax returns for each of the years and whether any part of the underpayment of tax for each year was due to the fraud of petitioner Clente A. Bevitori (hereinafter Bevitori.) [2] In the event fraud is not found, petitioners raise the defense of the statute of limitations. For convenience we have combined our Findings of Fact and Opinion. Some of the facts have been stipulated. At the time of the filing of the petition, petitioners, who are husband and wife, resided in Longwood, Florida. Petitioners filed joint U.S. Individual Income Tax Returns for each of the years 1971 through 1974, inclusive, [3] using the cash basis method of accounting. For some time prior to and including the first eight months of the year *256 1971, Bevitori was employed by Commercial Credit Corporation (and his wife by Continental Oil Company) in Ponca City, Oklahoma. In the fall of 1971, petitioners moved back to Lawton, Oklahoma, where Bevitori's mother, Mrs. Geneva Bevitori (Mrs. Bevitori), resided, in order to commence work for Custom Recording Company, Inc. (Recording), a producer of music tape recordings with its business activities centered in South Carolina. Bevitori's duties for Recording were to establish new outlets for the sales of tapes and to promote sales to existing outlets west of the Mississippi. Charles A. Schafer (Schafer) was the owner and president of Recording. [4] In late 1971 or early 1972, Mrs. Bevitori established a business under the name of Custom Distributors (Distributors) [5] as a distributor of Recording's tapes with its business location in Lawton. *257 Bevitori's compensation arrangement with Recording was a commission of 10 percent on all net sales of tapes west of the Mississippi, earned as the tapes were actually paid for by the distributors. Bevitori also was given a drawing account or an advance against commissions, initially $1,800 per month, which essentially was fixed as the amount petitioners needed for living purposes. The drawing account was gradually increased thereafter to more than $3,000 per month. On the basis of the record as a whole, it is unclear whether, at the end of 1971, petitioner's entitlement to commissions was more or less than the payments he received during 1971. For the remaining years, 1971 through 1974, Bevitori's commissions equaled or exceeded the amounts paid to him and charged to his drawing account. The amounts of the periodic draws received as advance commissions or as advances against commissions were received by Bevitori under a claim of right without any obligation or intention on his part to repay to Recording any of the payments so received, irrespective of whether or not at any particular time the aggregate of the payments may have been in excess of commissions actually earned on *258 a cumulative basis or otherwise. Nor did Recording intend that any year end deficit in Bevitori's drawing account constitute a debt to it. During 1972, 1973 and 1974, Bevitori also engaged in sales activities for Distributors and received from it at various times cash advances, commissions, travel and other expense reimbursements and miscellaneous payments. These sums were received by petitioner under a claim of right with no intent or obligation to repay. [6]
The parties have stipulated to the receipt by Bevitori of payments from Recording and from Distributors during each of the years 1971 through 1974 in the following amounts: 1971
1972
1973
1974
Recording:
$8,270.00
$35,527.50
[7] $67,964.28
$44,148.52
Distributors:
$ 200.00
$ 4,385.34
$20,253.95
Total
$8,270.00
$35,727.50
$72,349.62
$64,402.47
The parties have also stipulated that Bevitori is entitled *259 to no deduction for charitable contributions in 1971 or 1972 and that he is entitled to deductions for charitable contributions in 1973 of $7.50 and in 1974 of $54; that Bevitori received interest income of $90.06 in 1973 and that he is entitled to business expense deductions in excess of those claimed on his tax return for 1971 amounting to $2,243.18. The 1973 interest income was included in petitioners' 1973 income tax return. The charitable contribution deductions and the additional 1971 business expenses were allowed in the notice of deficiency. It is further stipulated that during 1973 petitioners built a residence on a lot purchased by them in Lawton in 1972. Part of the down payment came from Recording in the form of a check dated April 18, 1973, in the amount of $10,000. [8] During the audit Bevitori, at least initially, informed respondent's agents that this sum was a loan. Apparently his initial statement to respondent's agents was later qualified with the admission that the sum would have been "repaid" out of commissions. In his oral testimony, he again claimed the sum as a loan and also testified that he gave Schafer a promissory note to reflect the loan. Bevitori's *260 testimony is directly contradicted by Schafer, who indicated that Bevitori clearly understood that the greater part of the sum was to be taken out of already earned commissions and the balance out of soon to be earned commissions, and that no note was ever executed. No note evidencing this transaction was delivered to Schafer by Bevitori. We find as a fact that this sum of $10,000 was an advance against commissions earned or to be earned and that, like other receipts from Recording, was received by Bevitori under a claim of right without any obligation or intention on his part to repay. There is further uncertainty in the record as to whether Recording issued a Form 1099 to Bevitori covering the annual payments by Recording *261 to him for any of the years in question. Apparently Bevitori was not treated as an employee of Recording for tax purposes; no tax was withheld from any payments to him and no Form W-2 was prepared or filed. No Form 1099 was introduced into evidence. [9] On this record it would be difficult to make a finding of fact as to which years, if any, Recording issued a Form 1099 to Bevitori. Since the burden of proof on fraud is upon respondent and the receipt of a Form 1099 would be pertinent principally on the fraud issue, we will accept petitioner's contention that no such forms were received, notwithstanding the lack of credibility of petitioners' witnesses. The principal characters in the business transactions out of which the tax issues in this case arose, Mrs. Bevitori, Bevitori and Schafer, all *262 testified.Their credibility is a major factor in the fraud determination. Both Bevitori and Schafer were indicted for fraudulent evasion of taxes. Bevitori pled guilty to willfully evading income tax for the year 1973 and received a light sentence.Schafer, on the other hand, contested the criminal charge, was convicted and sentenced to prison for a short period.Based upon our observations of the individuals who testified and our comparison of their testimony with that of other witnesses, of documents and with other parts of the record, we find the testimony of Bevitori and Mrs. Bevitori to be highly suspect. It was patently obvious that Mrs. Bevitori was coloring her testimony in order to attempt to establish that her son paid no attention to record keeping or to the financial aspects of his business and that the tax returns were based upon verbal reports by Schafer to her as to taxable income paid by Recording to Bevitori. This posture of complete reliance by Bevitori upon his mother, to some extent upon his wife, and ultimately on Schafer was vigorously echoed by Bevitori in his testimony. The facts, however, belie such testimony. Bevitori's defense is in part legal and in *263 part factual. In essence he contends that payments from Recording were not taxable until earned as commissions and presumably that the tax returns included the earned commissions as verbally reported to Mrs. Bevitori by Schafer, at least for the years 1971, 1972 and 1973. Thus, Mrs. Bevitori testified that for each of those three years she obtained by telephone from Schafer the amount of Bevitori's income for the year and either gave that figure to Bevitori or reported it directly to the accountant. This testimony is corroborated only in general terms by Bevitori and is controverted by the record as a whole. We conclude that Mrs. Bevitori's story is a fabricated excuse for her son's tax delinquency. By contrast Schafer was forthright and credible, and we accept his testimony. The Federal income tax return of petitioners for the year 1971 was prepared by an accountant and filed on December 15, 1972. The accountant testified that he dealt directly with Bevitori. That return does not reflect any compensation received from Recording. Notwithstanding Bevitori's testimony to the contrary, we find that Bevitori failed to disclose to the accountant any facts as to his job with or *264 receipt of payments from Recording. The returns for the years 1972, 1973, and 1974 was filed respectively on December 12, 1974, January 9, 1975, and August 25, 1975. In the case of these returns, petitioners' counsel acted as tax return preparer.Similarly, Bevitori dealt directly with his attorney, acting as return preparer, and gave his attorney both incorrect and incomplete information. [10] While the record contains relatively little information as to tax return preparation with respect to the year 1974, Bevitori was no more candid or accurate with his tax return preparer with respect to that year. Also, Bevitori in at least one instance furnished inaccurate and misleading information to respondent's agents with respect to the $10,000 payment from Recording received in 1973 and his testimony on this point was inaccurate. *265 From this record we cannot determine the basis for the income figures used in the returns for 1972, 1973 and 1974. Payments received by Bevitori during each year from Recording and from Distributors in the aggregate were substantially in excess of the amounts reported on the income tax returns. It is not even explicit in the testimony of Mrs. Bevitori and Bevitori that the tax return gross income figures are the amounts allegedly given to Mrs. Bevitori by Schafer over the telephone. Moreover, there is no assertion by petitioners that any of the payments received by Bevitori from Distributors were in whole or in part included in any tax return gross income total. Neither do petitioners contend that these payments from Distributors were not taxable in the year of receipt. Thus, while it is evident that the gross income reported on the 1972 through 1974 tax returns must have been derived from Recording, there is a total absence of proof as to the rationale for or the method by which payments from Recording were segregated by petitioners between receipts treated as taxable and nontaxable in each of these years. Whatever the source of these 1975 through 1974 gross income figures *266 may have been, the source was not a verbal communication from Schafer, or any other report by Recording directly or indirectly to Bevitori. [11]
Sales of the tapes, *267 both the volume of sales by Recording west of the Mississippi and the sales by Distributors, increased rapidly during the year 1973 and then dropped off in 1974 and 1975 with the termination of Bevitori's relationship with Recording in 1975. [12]
Both in 1973 and in 1974, Bevitori and his attorney traveled to Recording's place of business in South Carolina to reconcile their respective accounting records. A part of petitioners' underpayment of tax in each of the years 1971 through 1974, inclusive, was due to fraud. We first must determine *268 the tax character of the payments received by Bevitori from Recording.Petitioners contend that the payments should be treated as loans for tax purposes and that Bevitori did not earn taxable income until commissions were actually earned by him. We have found as a fact that for every year other than 1971 the earned commissions each year equaled or exceeded the payments by Recording to Bevitori. Hence, even if petitioners' position were correct, the result in three of the years would be the same. In any event, as to each year, including 1971, the law is clear. We have found, contrary to petitioners' contentions, that there was no intent on the part of Bevitori to make repayment of any of the funds received nor any intent on the part of Schafer or any of his corporations to enforce repayment of any advances which at the end of any year may have exceeded earned commissions. These payments were received under a claim of right and constituted taxable income in the year of receipt. Beaver v. Commissioner,55 T.C. 85 (1970); Fisher v. Commissioner,54 T.C. 905 (1970); see also, Moorman v. Commissioner,26 T.C. 666 (1956). The cases *269 cited by petitioners are not on point. In addition, any reimbursement which Bevitori received from Recording for moving expenses and travel and like expenses incurred by him were required to be included in gross income to be offset by expenses actually incurred. Section 61; Commissioner v. Kowalski,434 U.S. 77 (1977); Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955); Rietzke v. Commissioner,40 T.C. 443 (1963); see also Moorman v. Commissioner,supra.Thus, all of the payments received from Recording in each of the four years constituted income taxable to petitioners in the year received. During the years 1972, 1973 and 1974 Bevitori received from Distributors payments, the amounts of which were stipulated and which in the stipulation have been variously characterized as commissions, advances for commissions, advances for or reimbursements of travel and supplies, and miscellaneous "checks." As we have found, these amounts were received by petitioner under a claim of right with no intent or obligation to repay and are includible in gross income under section 61. Thus, for the years 1971 through *270 1974, petitioners' corrected gross income was as determined by respondent in the statutory notice, [13] viz.: 1971
$20,003.56
1972
35,727,50
1973
72,439.68
1974
65,780.47
Petitioners appear to concede that collateral estoppel bars petitioners from denying that whatever deficiency we find for the year 1973 was fraudulent as to Bevitori. [14] We have found a substantial deficiency for 1973 and, therefore, by reason of collateral estoppel, Bevitori is liable for additions to tax under section 6653(b). With respect to the years 1971, 1972 and 1974, respondent bears the burden of proof with respect to fraud and such proof must be by clear and convincing evidence. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. Crucial to the determination is whether in this case Bevitori had an actual specific intent to evade a tax believed to be owing. E.g., *271 Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958), Estate of Pittard v. Commissioner,69 T.C. 391, 400 (1977). Such intent may be inferred from circumstantial evidence. Powell v. Granquist,supra at 61; Gajewski v. Commissioner,67 T.C. 181, 200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Beaver v. Commissioner,supra at 92, 93.
There is no dispute as to the amount of payments received in each year by Bevitori from Recording and from Distributors. Petitioners seek to avoid or explain the circumstantial evidence pointing towards fraud on Bevitori's part at least as to the payments by Recording on two bases, which are not entirely consistent--that Bevitori relied upon others for information and advice and that the law governing the taxability of the payments was uncertain. Bevitori disclaims knowledge of books and records, seeking to hide behind *272 the "skirts" of his mother, who in turn attempts to lay the blame for any underpayment on Schafer. Petitioners contend that Bevitori reported on his tax returns for each year the income which Schafer told his mother was taxable to him. There is, however, absolutely no corroboration of this part of Mrs. Bevitori's testimony. Neither is it clear in the record that the amounts allegedly given to her by Schafer correspond to the income shown on petitioners' tax returns. Neither Bevitori nor his mother have sought to explain why, if Bevitori were totally ignorant of the facts, it was he and only he who had direct dealings with the accountant who prepared the 1971 tax return and with petitioners' counsel who prepared the tax returns for the remaining three years. No dates of the alleged telephone conversations were mentioned. Apparently no memoranda were made of the calls or of the amounts of income reported by Schafer. At least none were offered in evidence, nor was there testimony that memoranda were made. It is inconceivable that Mrs. Bevitori would not have made some sort of a notation of the amount of taxable income to be reported on her son's tax return, since that figure had *273 to be communicated to the return preparers by him. That Mrs. Bevitori and Bevitori would not have arranged for written confirmation of the telephoned figures is also unbelievable, particularly since Mrs. Bevitori, according to her own testimony, was well aware of the requirements for issuance of an annual Form 1099 by Recording. And in spite of the fact that petitioners' counsel accompanied Bevitori to Schafer's place of business in 1973 and again in 1974 to reconcile their records, there is no suggestion that either of the Bevitoris informed the attorney-tax return preparer of the lack of any Forms 1099 or of uncertainty as to the amount of taxable income. It is also beyond reason to credit Bevitori with good faith in advising his attorney as his tax return preparer for 1972 that his business arrangement with Recording commenced in August of 1972, rather than in October 1971. Bevitori cannot deny that he was aware that annual tax returns were his obligation or that his return for the year 1972 was due on April 15, 1973. Moreover, his argument that his payments from Recording were not taxable until earned would have required reporting the 1971 payments for 1972. Had he done so, *274 his 1972 return certainly would have shown his business as commencing in 1971. Neither do we believe that by August 1974, when Bevitori went to his attorney to seek help with tax return delinquencies for 1972 and 1973, he was not well aware of the fact that he had earned substantial commissions from Recording which were required to be reported. Even if Bevitori did not know the exact amount of his earnings in each of the years 1972 and 1973, he was certainly required to be candid with his tax return preparer. Unless he were attempting to evade his tax responsibilities and to mislead his tax return preparer, we do not believe that Bevitori would have failed to advise his preparer of the allegedly unsuccessful efforts to obtain accurate information from Recording as to commissions earned, especially when he and his attorney traveled to Recording's office both in 1973 and 1974 to reconcile books. Even if we were to assume that accurate information had not been obtained from Schafer or Recording by the tax return filing time for the years 1972 and 1973, Bevitori could and should have filed returns on the best information available on or before the due dates, sought extensions, or at *275 the very least sought his attorney's advice. His feeble excuse for the late filing is not acceptable. Petitioners' alternative contention is that the fraud addition would not lie where there is a genuine doubt as to the taxability of a receipt. Petitioners cite for this proposition Mayock v. Commissioner,32 T.C. 966 (1959); and Jemison v. Commissioner,45 F.2d 4 (5th Cir. 1930). In Mayock, the petitioner was a credible witness and the Court simply accepted his testimony that he believed as a matter of law that not all of the receipts in question was taxable to him. In Jemison, the Fifth Circuit held for the petitioner because the petitioner had disclosed all of the facts to his attorney and had been advised that the disputed item was not taxable. Neither of these cases is factually applicable here. Bevitori offered no basis for his belief, if he had one, that the taxability of the payments from Recording was unclear. Rather, his conduct "indicated a subjective belief in the unlawfulness of the conduct." United States v. Ingredient Technology Corp.,698 F.2d 88, 97 (2d Cir. 1983), cert. denied     U.S.    *276 (June 20, 1983). Finally, there is the matter of commissions earned from and reimbursements paid by Distributors. Petitioners have chosen simply to ignore this facet of the case. Omission of more than $20,000 of income from Distributors from the 1974 return reflected the pattern of understatement commenced with the year 1971. This is persuasive evidence of fraud. Otsuki v. Commissioner,53 T.C. 96, 107-108 (1969). This case is analogous to Drieborg v. Commissioner, a Memorandum Opinion of this Court, affd. in part and revd. in part, 225 F.2d 216 (6th Cir. 1955), in which we found fraud on the part of the petitioner husband who had furnished his tax return preparer incorrect facts and had understated his income for a number of years. Bevitori was aware of and must be held responsible for the pattern of understating his gross income for four consecutive years. In addition, we have found as a fact that Bevitori misrepresented to respondent's agents during the investigation the facts as to the alleged $10,000 loan. This is another clear indication of fraud. McGee v. Commissioner,61 T.C. 249 (1973), affd. 519 F.2d 1121, 1126 (5th Cir. 1975). *277 Finally, as we have found, Bevitori's testimony is not worthy of belief in material respects. Respondent has by clear and convincing evidence shown that the understatements of income resulted from Bevitori's willful and knowing intent to evade his income tax liabilities for each of the years 1971 through 1974, both inclusive. Thus, the additions to tax under section 6653(b) are also due for each of the years 1971, 1972 and 1974. In view of our conclusions as to fraud, we do not reach the issue as to the statute of limitations. The other arguments advanced by petitioners need no further comment. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Fraud is not asserted against petitioner Linda C. Bevitori.↩
3. Each tax return was filed late. Returns for 1971 through 1973 were clearly delinquent; it is not clear whether the late filing of the 1974 return was covered by extensions.↩
4. Schafer operated under a number of names, including National Audiotronics and Charles A. Schafer Holding Company and/or Charles A. Schafer Industries. Some payments appear to have been made to Bevitori by some of these controlled entities. For purposes of this opinion, we will treat all such entities as included within the term Recording. ↩
5. There appears to be some contention that Distributors may have been a partnership from its inception but the only partnership return on Form 1065 which was filed was for the period January 1, 1974, to September 30, 1974. That return reported the partners to be Bevitori and his mother. The business was incorporated as of October 1, 1974. Petitioners on brief make some passing reference to their contentions as to partnership status in the earlier years but we are not informed as to whether or how this would affect petitioners' taxable income for these earlier years. Determination of the partnership issue for the earlier years does not appear to be material to any of the issues in dispute. Moreover, the record is insufficient for us to be able to make a determination for any year. Therefore, we accept partnership status of Distributors for part of the year 1974 up to its incorporation and sole proprietorship status for 1972 and 1973, which is in accordance with the tax treatment adopted by Mrs. Bevitori and at least concurred in or accepted by Bevitori and by respondent. There is also some confusion in the record about the name of Mrs. Bevitori's business. We use the word "Distributors" to refer to this business throughout this period, whatever may have been its legal status or correct name.↩
6. There is nothing in the record, other than the stipulation, concerning the receipt of these sums. Nor did petitioners argue that these sums were advances subject to repayment.↩
7. Includes $1,000 withheld by Recording as a contribution to a profit-sharing plan.↩
8. In view of Bevitori's contention that this sum was a loan, we assume that it was not included in the income reported on Bevitori's 1973 income tax return. However, it is impossible on this record to determine the sources or components of the income reported by petitioners for the years 1972 through 1974. See footnote 9 below. This $10,000 is included in the sum of $67,964.28, which the parties have stipulated to have been received in 1973 from Recording.↩
9. Bevitori's testimony during the trial was in conflict with the testimony of the special agent and the revenue agent as to Bevitori's statements to them during the audit. Schafer's testimony is inconclusive. Mrs. Bevitori, who was well aware of the requirements for issuance of an annual Form 1099 by Recording, denied receipt of any Form 1099 with the possible exception of 1974.↩
10. The stipulated record includes two affidavits executed in 1976 by petitioners' counsel. Both emphasize that the tax returns for the years 1972 and 1973 were based on information supplied by Bevitori and used without audit. No explanation of these affidavits is offered but we assume, in view of the dates, that they were prepared in connection with the audit and delivered to respondent's agents. We cannot fail to note that petitioners' counsel disclaimed responsibility for the accuracy of the two tax returns. The affidavits confirm, for example, that Bevitori supplied the income figure for 1972, as well as the false fact that he had been in the tape business for only six months in 1972.↩
11. The gross wages from Commercial Credit Corporation and Continental Oil Company constitute the total gross income shown on the 1971 return. Thus, petitioners did not report any of the payments received from Recording in 1971, which totaled $8,270. One of the stipulated exhibits purports to reflect the actual checks received from Recording which were omitted and reported for income tax purposes.The 1971 sum is obviously correct. If we accept this exhibit as fact, it establishes omission of substantial payments from Recording, without any apparent pattern, and omission of all payments from Distributors. The exhibit is stipulated to be admissible "as a summary only." See Rule 1006, Federal Rules of Evidence.↩ Taking into account Bevitori's testimony and petitioners' argument on brief, we are uncertain as to the intent of the stipulation. Since this exhibit cannot help petitioners, as we view the case, and could be a factor against their interest, we have not based our decision in any fashion upon Exhibit 77-BY.
12. Respondent has requested findings of fact that Bevitori handled large amounts of cash and argues that such conduct is another indicia of fraud. While the record seems to support a finding that currency was on occasion withheld from deposits or obtained by cashing checks and that some currency was deposited, we have not included such findings since they would have little bearing on the underpayments which we have found or on our conclusions as to fraud. Respondent also argues that Bevitori failed to adequately maintain books and records. However, the evidence on this is uncertain and the issue unnecessary to our determination.↩
13. There are some discrepancies between the amounts stipulated and the amounts reflected in the statutory notice. Since the discrepancies are not explained, we have followed the statutory notice.↩
14. Petitioners have not raised the "innocent spouse" defense, section 6013(e).↩