SPIEGEL, District Judge.
 

 George Vaughan, the debtor, appeals a district court order holding that payments which he made to corporate creditors pursuant to a guaranty agreement are deductible as nonbusiness bad debts, 26 U.S.C. § 166(d), rather than as losses incurred in a transaction entered into for profit, though not connected with a trade or business, 26 U.S.C. § 165(c)(2).
 
 [1]
 
 The district court, 21 B.R. 695, order reversed a bankruptcy court decision which had reached the opposite result. The resolution of this case largely depends upon an interpretation of
 
 Putnam
 
 v. Commissioner of Internal
 
 Revenue,
 
 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144 (1956).
 

 
 *198
 
 In January, 1961, Vaughan founded Burger-Broil Corporation with the intent to establish a fast-food restaurant chain. Vaughan was president and principal shareholder. Between 1961 and 1965, Burger-Broil entered into twenty-two leases of restaurant sites. Since the corporation was new, the lessors required Vaughan’s personal guaranty of its obligations.
 

 The business did not prosper. During bankruptcy proceedings in 1965, Burger-Broil’s assets were liquidated and distributed. The creditors then sued Vaughan on the guaranties. The latter subsequently filed for a Plan of Arrangement under Chapter XI of the Bankruptcy Act of 1898.
 

 The portion of the plan in controversy here involves eleven of the lessors. The plan provided that in consideration for partial payments of the amounts owed, the creditors would “release” Vaughan from his obligations as guarantor; the amounts paid were not to be considered payments of Burger-Broil’s obligations. Moreover, the plan stated that Vaughan would not attain subrogation rights against the corporation.
 

 Vaughan paid as promised between 1969 and 1973. On his tax returns for those years, he deducted these payments from ordinary income under 26 U.S.C. § 165(c)(2). The Commissioner assessed a deficiency on the theory that the payments in question were nonbusiness bad debts which were deductible only as short term capital losses under 26 U.S.C. § 166(d).
 

 In
 
 Putnam,
 
 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144 the Supreme Court held that where a taxpayer, pursuant to a guaranty agreement, fully pays the debts of a bankrupt corporation (and, of course, is never reimbursed), the amounts paid are deductible as bad debts under § 23(k)(4) (§ 166(d) under the 1954 Code).
 
 [2]
 

 Vaughan attempts to distinguish
 
 Putnam
 
 in two ways. First, since Vaughan only partially paid Burger-Broil’s creditors, no subrogation rights arose as in Putnam.
 
 [3]
 
 Thus no debt from the corporation to Vaughan ever arose to which § 166(d) could be applied. Secondly, the transaction in the present case was structured as a purchase of a “release” from the duty to pay Burger-Broil’s debts rather than as a payment of those debts. Vaughan relies primarily upon two cases where a taxpayer received a § 165(c)(2) deduction for amounts paid in obtaining a release from guarantor obligations.
 
 See Rushing v. Commissioner of Internal Revenue,
 
 58 T.C. 996 (1972);
 
 Shea v. Commissioner of Internal Revenue,
 
 36 T.C. 577 (1961),
 
 aff’d per curiam,
 
 327 F.2d 1002 (5th Cir.1964).
 

 The Commissioner responds that although subrogation rights were present in
 
 Putnam,
 
 the case rested upon an alternative ground: equal tax treatment for transactions which have the same practical effect. The Commissioner contends that there is no economic difference between directly investing money, which when lost because of corporate failure is treated as capital loss, and indirectly investing money by promising to pay corporate debts if the company becomes unable to do so. Thus, losses incurred under the latter scenario should be treated as capital losses rather than ordinary losses. This is what § 166(d) provides.
 
 See Horne v. Commissioner of Internal Revenue,
 
 523 F.2d 1363 (9th Cir.1975),
 
 cert. denied,
 
 439 U.S. 892, 99 S.Ct. 249, 58 L.Ed.2d 237 (1978);
 
 Stratmore v. United States,
 
 420 F.2d 461 (3d Cir.),
 
 cert. denied,
 
 398 U.S. 951, 90 S.Ct. 1870, 26 L.Ed.2d 291 (1970);
 
 Martin v. Commissioner of Internal Revenue,
 
 52 T.C. 140, 146 (1969),
 
 aff’d per curiam, 424
 
 F.2d 1368 (9th Cir.),
 
 cert. denied,
 
 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138 (1970).
 

 Secondly, the Commissioner argues that both
 
 Rushing
 
 and
 
 Shea
 
 are distinguishable. The amounts paid in those cases in order to obtain a release from guarantor obligations were paid to third parties who either assumed the obligations in question (Shea) or
 
 *199
 
 helped the guarantor to reduce his contingent liability
 
 (Rushing,
 
 attorney’s fees). In neither case did the guarantor pay a corporate debt. In the present case, Vaughan paid the money directly to the creditors. The Commissioner contends that while Vaughan may desire to call these payments “consideration” for a “release” of his guarantor obligations, the payments in reality were intended to cover corporate debts. The Commissioner concludes that this is not a true “release” case.
 

 We conclude that Vaughan’s payments to the lessors represent payments to cover Burger-Broil’s corporate debt. As such, they are not deductible as losses incurred in a transaction entered into for profit under 26 U.S.C. § 165(c)(2). Rather, they are deductible as nonbusiness bad debts pursuant to 26 U.S.C. § 166(d). We embrace the thoughtful opinion of District Judge Scott Reed, and borrow heavily from it in reaching our conclusion.
 

 The disagreement concerning
 
 Putnam,
 
 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144 has been outlined above. The Bankruptcy Court shared Vaughan’s belief that
 
 Putnam
 
 turned on the “presence of the technical right of subrogation.”
 
 (Opinion of the Bankruptcy Court,
 
 p. 11). The district court read
 
 Putnam
 
 more broadly, and applied both the reasoning of the Third Circuit Court of Appeals in
 
 Stratmore v. United States,
 
 420 F.2d 461 (3rd Cir.),
 
 cert. denied,
 
 393 U.S. 951, 90 S.Ct. 1870, 26 L.Ed.2d 291 (1970), and that of the Tax Court in
 
 Martin v. Commissioner,
 
 52 T.C. 140 (1969),
 
 aff’d per curiam,
 
 424 F.2d 1368 (9th Cir.),
 
 cert. denied,
 
 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138 (1970).
 

 Martin
 
 and
 
 Stratmore
 
 both militate against Vaughan’s reading of
 
 Putnam.
 
 In
 
 Martin,
 
 the Tax Court concluded that the discussion of subrogation in
 
 Putnam
 
 is pertinent “only to the question of whether the debt ... ‘became’ worthless . . .; ” and is not relevant to the issue of the nondeducti-bility of guarantor’s losses under § 165(c)(2). 52 T.C. at 146. In
 
 Stratmore,
 
 the Third Circuit looked beyond the guarantor’s failure to acquire subrogation rights, and opined that:
 

 the essence of
 
 Putnam
 
 is the view of the Court of the Congressional purpose behind section 166(c) (sic) and the part it was intended to play in the statutory scheme for a common tax treatment of all losses suffered by a corporate stockholder in providing his corporation with financing: these losses are to be treated as capital losses.
 

 420 F.2d at 465.
 
 [4]
 

 Based upon this reasoning the district court concluded that Vaughan’s guaranties constituted indirect loans of Vaughan’s personal financial resources to Burger-Broil. Therefore, Vaughan was “providing the corporation with financing” as contemplated in
 
 Putnam
 
 and
 
 Stratmore
 
 and the payments are properly treated as capital losses.
 

 We agree with the district court’s analysis of the applicable laws.
 
 [5]
 
 Furthermore,
 
 *200
 
 we are convinced that this analysis is buttressed by sound public policy considerations.
 

 A preoccupation with the presence of subrogation rights has several undesirable consequences. First, it allows the applicable state law to determine the character of the deduction. This result conflicts with the principle that differences in state law should not override the intent of Congress in enacting federal taxing statutes.
 
 See, Burnet v. Harmel,
 
 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199 (1932). If Vaughan’s position is accepted, differences among state provisions regarding subrogation may result in disparate tax treatment of taxpayers who are in similar economic positions. Second, the focus on subrogation permits the taxpayer to convert a capital loss into an ordinary loss almost at will.
 
 Stratmore,
 
 420 F.2d at 465. By paying all but a minimum amount of his obligation, a guarantor may be able to preclude any acquisition of subrogation rights and thus deal himself preferential ordinary loss treatment. The result is that the guarantor who makes full payment is limited to a short term capital loss deduction while the guarantor who makes only partial payment, enjoys a fully deductible ordinary loss. We agree with the Tax Court that “[t]his ano-mally is repellent.”
 
 Martin,
 
 52 T.C. at 146.
 

 Similar concerns mandate rejection of Vaughan’s characterization of the payments involved as a release from his guarantor’s obligation. The only clue that Vaughan’s payments were indeed consideration for a release of the guaranty obligations is the choice of words in the relevant portion of the Plan of Arrangement in Bankruptcy. Lurking behind this formality is the fact that the payments were made in response to the lessors’ demands for payment. The conclusion is inescapable that the payments were made essentially in satisfaction of obligations incurred on behalf of Burger-Broil Corporation.
 

 We feel compelled to look beyond this linguistic facade in passing upon the appropriate deductibility of these payments. To disregard the essence of these payments in deference to the form cast by the taxpayer is, quite literally, to permit the taxpayer to convert a capital loss to an ordinary loss at will. We find this anomaly equally repellent.
 

 We fear should we accept Vaughan’s characterization of the payments involved here, we would invite guarantors of corporate loans, who have been called upon to satisfy their obligations, to convert their capital losses to ordinary losses by making only partial payment and/or characterizing the payment as a release. Indeed, the only cases in which this would not result would be those in which the guarantor lacked sophistication in tax matters. This result is undeniably at odds with the Supreme Court’s reasoning in
 
 Putnam
 
 that “there is no real or economic difference between the loss of an investment made in the form of a direct loan to a corporation and one made indirectly in the form of a guaranteed bank loan. The tax consequences should in all reason be the same, and are accomplished by [§ 166(d)].”
 
 [6]
 

 Because we feel petitioner’s arguments imprudently exalt form over substance in an attempt to evade the rule of
 
 Putnam,
 
 the order of the district court is affirmed.
 

 [1]
 

 . The Code sections involved provide in pertinent part:
 

 Section 165(a), GENERAL RULE — There shall be allowed as a deduction any loss sustained during the taxable year. . ..
 

 ******
 

 (c) LIMITATION ON LOSSES OF INDIVIDUALS — In the case of an individual, the deduction under subsection (a) shall be limited to ....
 

 * * * * * *
 

 (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business....
 

 * * * * * *
 

 Section 166(d), NONBUSINESS DEBTS.
 

 (1) GENERAL RULES — In the case of a taxpayer other than a corporation....
 

 -i: * :f: * *
 

 (B) Where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.
 

 26 U.S.C. §§ 165(a), (c)(2); 166(d)(1)(B) (1964 & 1970).
 

 [2]
 

 . Although
 
 Putnam
 
 was decided under the 1939 Code, the provisions involved in the instant case are the same under the 1954 Code.
 

 [3]
 

 .
 
 See, e.g., Bryan v. Henderson Electric Co.,
 
 566 S.W.2d 823, 825 (Ky.App.1978) (Kentucky law requires payment of the entire debt before subrogation is allowed).
 

 [4]
 

 . The thrust of
 
 Stratmore
 
 deals with 26 U.S.C. §§ 165(c)(2), 166(a), (d). At no other point in the opinion is reference made to § 166(c). Therefore, it is reasonable to deem this reference a typographical error.
 

 [5]
 

 . The cases relied upon by Vaughan are readily distinguishable from the instant case. The facts in
 
 Martin v. Commissioner,
 
 52 T.C. at 140, resemble the facts in this case. Martin guaranteed corporate loans for money necessary to develop physical facilities for the corporation. The Tax Court held Martin’s later partial payment of his guarantor’s obligation deductible as a short term capital loss, and distinguished many of the cases Vaughan relies upon here.
 
 Shea v. Commissioner,
 
 36 T.C. 577 (1961),
 
 aff’d per curiam,
 
 327 F.2d 1002 (5th Cir. 1964) was distinguished on the basis that the payments involved were not payments on the guarantor’s obligation. Neither the corporation nor its subsidiaries was in immediate danger of insolvency, nor was payment demanded of the guarantor.
 
 Shea
 
 is therefore distinguishable as a “release” case. Similarly,
 
 Condit v. Commissioner,
 
 40 T.C. 24 (1963),
 
 aff’d,
 
 333 F.2d 585 (10th Cir.1964), was distinguished as not involving payments made in satisfaction of the liability of the guarantor. Rather, the payments were made from one shareholder to another pursuant to an agreement among shareholders to share losses equally. Finally,
 
 Rietzke v. Commissioner,
 
 40 T.C. 443 (1963) was distinguished as involving settlement of other claims in addition to the guaranty. While the Tax Court acknowledged troublesome language in
 
 Rietzke
 
 
 *200
 
 to the effect that the presence of subrogation is required, the
 
 Martin Court
 
 dismissed this language as unnecessary to the decision in
 
 Rietzke.
 

 In
 
 Rushing v. Commissioner,
 
 58 T.C. 996 (1972), the payments involved were attorney’s fees incurred in an attempt to reduce the contingent liability of the guarantor. Thus in none of these cases was the payment involved the payment of a corporate debt.
 

 [6]
 

 . This reads “§ 23(k)(4)” in the original.
 
 See
 
 Note 3
 
 supra.